FRANK RICHARDSON, Respondent, *v.* THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, Appellant.

Second Department, November 27, 1931.

*John J. McElhinny* [*Charles E. Miller* with him on the brief], for the appellant.

*John Winans* [*Samuel I. Siegel* with him on the brief], for the respondent.

KAPPER, J. The question here is whether the plaintiff may proceed by action under the Federal Employers' Liability Act (U. S. Code, tit. 45, §§ 51–59), or whether his sole redress for personal injuries is under the Longshoremen's and Harbor Workers' Compensation Act (U. S. Code, tit. 33, §§ 901–950), which declares (§ 905) that the remedy thereunder is exclusive " and in place of all other liability of such employer to the employee."

The plaintiff has sued in the Supreme Court, Queens county, and contends that the Federal Employers' Liability Act as well as section 2 of the Federal Safety Appliance Act (U. S. Code, tit. 45, §§ 1–46) affords him a right of action for damages because of the character of the work which he was performing at the time of his injuries. It is unnecessary to set forth here the provisions

of these Federal acts which afford remedies to railroad employees who are injured while engaged in interstate commerce.

The complaint, as well as the record, shows the maintenance by the defendant of a freight yard and certain " float bridges " in Jersey City adjacent to the Hudson or North river; and that in the conduct of the defendant's railroad business (interstate as well as intrastate commerce), it operated numerous " car floats " for the transportation of its freight cars by water. The complaint further alleges plaintiff's employment by the defendant as a yard brakeman, such employment and the performance of his duties requiring him to work " in and upon " said " freight yard, float bridge, car float and railway freight cars; " that on December 20, 1930, while in the performance of his employment, and by reason of a defective " brake staff " on one of defendant's railway freight cars, he was thrown from the car to the " *deck* of defendant's said car float, upon which said car had then *lately been placed.*"

The answer joins issue as to defendant's negligence and sets up as a separate defense the above mentioned " Longshoremen's and Harbor Workers' Compensation Act," asserting the exclusiveness of the remedy thereby provided, and further adding the certificate of the " United States Employees' Compensation Commission," that the defendant has complied with the provisions of said act and has secured the payment of compensation to its employees " who are engaged in work which is subject to the provisions of the Act." The plaintiff submits an affidavit averring his employment " as a railroad freight-yard brakeman, engaged in classifying and shifting freight cars at defendant's terminal freight-yard, at the water front in Jersey City; " that at the time of his accident he was engaged " exclusively in railroad work, shifting cars which had just come in from a road run over defendant's lines of railroad tracks and placing such cars on various tracks, some of which were exclusively on land and some of which extended on to defendant's float bridges and car floats, from which positions they were subsequently to be moved in defendant's business as a common carrier in interstate commerce by railroad, by means of defendant's instrumentalities of such business, including its vessels, wharves, &c.; but such transportation or other operation by means of car floats or vessels was not to ensue until completion of the tasks of railroad operation, upon which the members of my switching crew, including myself, were then engaged."

He further avers: " The draft or string of cars upon which I was working at and immediately before said accident, were still attached to the engine and were exclusively under control by the engine and their own brakes, the engine and brakes of the cars

in operation being exclusively subject to control, respectively by the engineman and fireman of the engine and myself and other members of my crew, as to the attached cars."

It is shown by defendant that the car float on which plaintiff was injured had two tracks, on one of which there had been placed four cars, and on two of which plaintiff had already " set the hand brakes * * * and was setting the hand brakes on the third car when he met with his accident, the cars being at the time at rest and not moving."

That the car float in question was in and upon navigable waters is not disputed, nor is there any dispute of the precise spot of plaintiff's accident and injuries, namely, on the car float itself.

The plaintiff does not question the procedure adopted here by defendant seeking to dismiss the complaint and to have applied as plaintiff's sole remedy the compensation provided pursuant to the said Compensation Act (supra). Indeed, plaintiff urges a determination upon this record, no part of which is the subject of controversy as to the facts, frankly stating that if plaintiff may not sue at law he had better be so apprised before entering upon the futility of preparing for trial.

The plaintiff stresses the character of his work as requiring him to be upon the boat only as an incident of his vocation as a freight railroad brakeman, and urges that as the occurrence could have taken place on land as well as on the water he does not come within the category of a maritime worker and that his mishap cannot be characterized as a maritime tort. The difficulty with the plaintiff's position, as I find it, is that his view ignores the well-settled law that the test of admiralty jurisdiction in cases of tort is the *locus* of the accident, and if that is found to have occurred upon navigable waters admiralty has exclusive jurisdiction save a right to sue in common-law courts where the common law is competent to give a remedy. In *Atlantic Transport Co.* v. *Imbrovek* (234 U. S. 52), where Imbrovek was working on a ship helping as a stevedore to load it, it was said (pp. 59, 60): " ' In regard to torts '— said Mr. Justice STORY in *Thomas* v. *Lane*, 2 Sumn. 1, 9 — ' I have always understood that the jurisdiction of the Admiralty is exclusively dependent upon the locality of the act. The Admiralty has not, and never (I believe) deliberately claimed to have any jurisdiction over torts, except such as are maritime torts, that is, such as are committed on the high seas, or on waters within the ebb and flow of the tide.' This rule — that locality furnishes the test — has been frequently reiterated, with the substitution (under the doctrine of *The Genesee Chief*, 12 How. [U. S.] 443), of navigable waters for tide waters. Thus, in the case of *The Phila-*

*delphia, Wilmington & Baltimore R. R. Co.* v. *The Philadelphia & Havre de Grace Steam Towboat Co.*, 23 How. [U. S.] 209, 215, the court said: ' The jurisdiction of courts of admiralty, in matters of contract, depends upon the nature and character of the contract; but in torts it depends entirely on locality.' Again, in the case of *The Plymouth*, 3 Wall. 20, where jurisdiction was denied upon the ground that the substance and consummation of the wrong took place on land and not on navigable water, the court said, p. 35: ' The jurisdiction of the admiralty over maritime torts does not depend upon the wrong having been committed on board the vessel, but upon its having been committed upon the high seas or other navigable waters. A trespass on board of a vessel, or by the vessel itself, above tide-water, when that was the limit of jurisdiction, was not of admiralty cognizance. The reason was, that it was not committed within the locality that gave the jurisdiction. The vessel itself was unimportant. * * * The jurisdiction of the admiralty does not depend upon the fact that the injury was inflicted by the vessel, but upon the locality — the high seas, or navigable waters where it occurred. Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance.' "

In *State Industrial Commission* v. *Nordenholt Corp.* (259 U. S. 263), speaking of the holding in the *Imbrovek Case* (*supra*), the court, after quoting from *Southern Pacific Co.* v. *Jensen* (244 U. S. 205) to the effect that Jensen's work was maritime as were his injuries and the rights and liabilities of the parties, say (p. 273): " The doctrine that locality is the *exclusive* test of admiralty jurisdiction in matters of tort had been questioned in the *Imbrovek Case*, and to show beyond any doubt that the maritime rules applied as to Jensen's injuries, we used the quoted language. Later, in *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469, we said, ' The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this court that it must now be treated as settled.' "

The Longshoremen's and Harbor Workers' Compensation Act was recently construed by the United States Supreme Court in *Nogueira* v. *N. Y., N. H. & H. R. R. Co.* (281 U. S. 128). In that case Nogueira was employed by the railroad company as one of a gang of freight handlers and was injured by the use of a hand truck carrying a bale of paper from the dock to the car float across a plank which ran from such dock to the middle of the float at a steep incline, the float being several feet lower than the dock. The act of moving resulted in the hand truck getting out of control,

skidding down the plank, and throwing Nogueira to the floor of the float and injuring him. Except for the fact that Nogueira was putting freight into a railroad car instead of setting a brake on one of the cars, as was the case with the plaintiff at bar, the cases are not unlike. It was held that the case was governed by the Longshoremen's and Harbor Workers' Compensation Act which prescribed exclusively the liability of employers where employees engaged in maritime employment suffered injury upon navigable waters. The history of the legislation was discussed by the chief justice, who pointed out that the compensation scheme applied to *all* employees, whether of the railroad or of the ship, who suffered injury in the course of their employment while upon the boat with the *exception of the master and the crew*, and that as the latter were expressly excepted it followed by the necessary inference of inclusion that the act embraced all others who suffered injury while on navigable waters. In closing the opinion the learned chief justice said (pp. 137, 138): "Nor is there anything of substance added to the argument for the petitioner by reference to the possible effect on the application of other laws in cases which come within the purview of the Longshoremen's and Harbor Workers' Compensation Act, for the question still is to what cases does that act apply according to its terms. The fact that the same employee of a railroad company may have different rights at different times is a familiar consequence of the application of different laws, as, for example, when the employee of a railroad company is engaged at one time in intrastate commerce and at another time, even on the same day, in interstate commerce; and the application of Federal laws where the employment falls within the Federal jurisdiction is manifestly a matter within the discretion of Congress. *Panama Railroad Company* v. *Johnson* (264 U. S. 375). In the present instance, had the petitioner been engaged in intrastate commerce, his case still would have been within the maritime jurisdiction of the Federal courts, and he would have been denied the benefit of the state compensation law. See *London Guarantee & Accident Company* v. *Industrial Accident Commission*, 279 U. S. 109. In these circumstances Congress dealt with the maritime employment of longshoremen whose injuries sustained on navigable waters would fall within the exclusive maritime jurisdiction, without regard to the distinction between intrastate and interstate transportation."

It would seem that the *Nogueira Case* (*supra*) is decisive of the case at bar. One other case, however, may profitably be cited, namely, *Buren* v. *Southern Pacific Co.* (C. C. A., 9th Circuit, 50 F. [2d] 407). There, a freight brakeman, while his train was on a

ferryboat in navigable waters, was injured while on top of a box car for the purpose of loosening the brake, the engine attached to the car causing the car to be moved and the brakeman's head to come in contact with a steel girder on the boat. It was asserted that he was acting as a brakeman, having no connection with the navigation of the boat, which was employed solely for transferring the railroad company's trains across certain waters. As stated in the opinion, " The boat was not otherwise engaged in trade or commerce, but was used solely as part of the appellee's railroad system to transport its trains over said straits." It was undisputed that compensation under the Longshoremen's and Harbor Workers' Compensation Act had been secured by the railroad company. The complaint was dismissed upon demurrer. The court say: " The sole question involved in the appeal is whether or not the act above referred to applied to the appellant at the time and place of the injury. We are unable to distinguish the case in principle from that dealt with by the Supreme Court of the United States in *Nogueira* v. *N. Y., etc., R. Co.*, 281 U. S. 128; 50 S. Ct. 303; 74 L. Ed. 754, where the subject was treated exhaustively. In that case the injured employee was engaged in moving freight by hand truck onto a freight car on a float which was used by the railroad company in transporting its loaded freight cars upon the navigable waters in and about New York. It is there held that the Federal Employers' Liability Act (45 U. S. C. A. §§ 51–59), relied upon by the appellant in this case as the basis for his recovery, did not apply, and that the Longshoremen's and Harbor Workers' Compensation Act, above cited, did apply to the injury in question. There seems to be no difference in principle between loading freight onto a car upon a lighter or ferry and moving a loaded freight car onto a ferryboat or lighter. In either case, where those so engaged are injured by accident, the locus of the accident is upon navigable waters, and this is the test of admiralty jurisdiction in cases of tort."

These authorities cannot be ignored if we would, and the conclusion must be arrived at that the plaintiff's sole remedy is under the compensation statute.

The order denying the motion to dismiss the complaint for lack of jurisdiction should, therefore, be reversed upon the law, without costs, and the motion granted, without costs.

LAZANSKY, P. J., YOUNG, HAGARTY and SCUDDER, JJ., concur.

Order denying motion to dismiss the complaint for lack of jurisdiction reversed upon the law, without costs, and motion granted, without costs.