## O'ROURKE v. PENNSYLVANIA R. CO.
### Civ. 10266.

United States District Court,
E. D. New York.
July 12, 1951.

---

2. Cinema Amusements v. Loews, Inc., D. C., 85 F.Supp. 319, 326.

3. D.C., 85 F.Supp. 328.

Herbert Zelenko, New York City, for plaintiff.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant (A. Harold Frost, New York City, of counsel).

KENNEDY, District Judge.

When this case appeared upon the trial calendar both counsel called my attention to the fact that the pleadings raised a serious question whether the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., or the Safety Appliance Act, 45 U.S.C.A. § 1 et seq. (upon which statutes plaintiff's claim is based) could properly be invoked by plaintiff even if defendant's negligence were proved, or an unsafe appliance caused plaintiff's injuries. For plaintiff was injured while acting as a railroad freight brakeman on a car float moored in navigable waters. Both counsel assured me that there was no factual dispute at all concerning either the nature of plaintiff's employment when injured or the place of the occurrence of the accident. I told counsel that it seemed to me the rules of civil procedure were broad enough to permit a preliminary determination of this question. Counsel for defendant then moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b) (6), 56(b), and 56(d), 28 U.S.C.A. supporting his motion with an affidavit. Counsel for the plaintiff stipulated in his own affidavit that plaintiff's accident had occurred on navigable waters and specifically conceded the facts which I now outline.

On January 28, 1948, plaintiff was employed by the defendant as a freight brakeman at the Harsimus Cove yards of the defendant at Jersey City, New Jersey. Part of plaintiff's duty was to work on car floats, and at the time of the accident he was doing brakeman's work on freight cars on Float No. 659 (owned by the defendant) while the vessel was moored in navigable waters of the United States. Plaintiff further conceded that defendant has made full compliance with all of the provisions of the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C.A. § 901 et seq., that defendant has offered to make payments to the plaintiff pursuant to that act, and that none of the statutory exceptions in the act apply, because Float No. 659 was a vessel of a burden greater than 18 tons, and plaintiff was neither a master nor member of the crew of the vessel, nor an officer or employee of the United States or any agency thereof at the time of the accident.

In the light of these conceded facts it seems to me that nothing but a question of law is presented, namely, whether a freight brakeman employed by a railroad and engaged in interstate commerce may invoke either the Federal Employers' Liability Act or the Safety Appliance Act, supra, even though he was injured upon a car float in navigable waters of the United States.

Both sides seem to admit that this question was decided in the negative by Nogueira v. New York, New Haven & Hartford Railroad Co., 1930, 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754. The plaintiff in that case was a freight handler engaged in handling a bale of paper which was, to use the language of the opinion, "a piece of interstate freight". Mr. Chief Justice Hughes, writing for a unanimous court, concluded that plaintiff's remedy under the Longshoremen's and Harbor Workers' Compensation Act was exclusive and that he could not invoke the Federal Employers' Liability Act even though he was a railway employee.

But plaintiff, citing Zientek v. Reading Co., D.C.E.D.Pa., 1950, 93 F.Supp. 875, urges that the Nogueira case was legislated out of existence in 1939 when Congress added a paragraph to the key section of the Federal Employers' Liability Act, 45 U.S.C.A. § 51. That addition, 53 Stat. 1404 reads as follows: "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter".

The reasoning in the Zientek case is that the 1939 amendment, just quoted, changes the law laid down by the Supreme Court in Nogueira, and that Congress intended to put back under the protection of the Federal Employers' Liability Act all railway employees even though their injuries were sustained upon navigable waters. The gist of the decision is that the 1939 amendment was a Congressional enactment *later* than the Longshoremen's and Harbor Workers' Compensation Act and *later* than the Nogueira decision. And so, it is said that when Congress by its last word failed to protect the exemption set up by the Compensation Act and the Nogueira decision, it impliedly revoked it.

There are at least two decisions directly in conflict with Zientek, Gussie v. Pennsylvania R. R. Co., 1949, 1 N.J.Super. 293, 64 A.2d 244, certiorari denied 338 U.S. 869, 70 S.Ct. 145, 94 L.Ed. 533; Job v. Erie R. Co., D.C.S.D.N.Y., 1948, 79 F. Supp. 698.

In the case last mentioned, Judge Rifkind takes an entirely different view of the meaning of the 1939 amendment to the Federal Employers' Liability Act than was adopted in Zientek. Judge Rifkind says that when Congress made it clear by the amendment that an employee was to have the benefit of the Federal Employers' Liability Act, though only part of his duties was in furtherance of interstate commerce, the intent was to do away with the confusion resulting from the fact that railway employees are frequently shifted from interstate to intrastate commerce even within the space of one working day. Judge Rifkind says that the object of the amendment was to do away with the "moment of injury" rule summarized in New York, New Haven & Hartford Railroad Co. v. Bezue, 1932, 284 U.S. 415, 52 S.Ct. 205, 76 L.Ed. 370. Certainly Judge Rifkind's position finds support in the printed report accompanying the 1939 amendment and the comments of the Senate Judiciary Committee. Senate Judiciary Report 661, quoted at length in Southern Pac. Co. v. Industrial Accident Commission, 1942, 19 Cal.2d 271, 120 P.2d 880, 883.

Moreover it is difficult to see how the 1939 amendment would have changed the decision in the Nogueira case even had it been in existence when that decision was written. The amendment can be paraphrased as follows: if any part of an employee's duty furthers interstate commerce he is deemed to be an employee of the carrier and shall be considered such for the purpose of the benefits of the act. But Nogueira was indubitably engaged in interstate commerce as the opinion shows. The bale which he was handling was "a piece of interstate freight". The opinion also shows that there was no contest over the question of employment. Hence, even though the 1939 amendment is in truth a later clarification of Congressional policy, it seems to me that the Nogueira decision would have come out exactly as it did even though the exact language of the amendment had been before the court.

The brief for the plaintiff suggests that the Nogueira case is capable of being distinguished because the plaintiff there was a freight handler ("longshoreman"), whereas in the case at bar he is a brakeman ("railroader"). I think what plaintiff's counsel really hints at is that the traditional maritime tort-jurisdiction test (locality) has become outmoded, and that the nature of the employment should be a substitute or perhaps an alternative test. In fact, plaintiff cites Davis v. De-

partment of Labor and Industries of the State of Washington, 1942, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246, as pointing the way to a twilight zone in the decisions and a "case by case" technique, 317 U.S. 249, 256, 63 S.Ct. 225, 229, 87 L.Ed. 246. But there is nothing in the 1939 amendment to suggest that Congress was changing the locality test found in the Longshoremen's and Harbor Workers' Compensation Act. As for the Davis case, the Supreme Court there found itself dealing with another complication arising from the "maritime but local" doctrine by which it had attempted to retreat from the harshness of the Jensen case prior to the enactment of the federal compensation act.[1] Mr. Justice Black cites many of these "maritime but local" decisions in a footnote in Davis, 317 U.S. 249, 253, 63 S.Ct. 225, 87 L.Ed. 246. But although that footnote mentions Nogueira, as does the concurring opinion of Mr. Justice Frankfurter and the dissent of Mr. Chief Justice Stone, I find no suggestion in the Nogueira opinion that it was in any way affected by the "maritime but local" exception. Indeed one of the leading decisions, Baizley Iron Works v. Span, 1930, 281 U.S. 222, 50 S.Ct. 306, 74 L.Ed. 819, where the nature of employment ("local") test was vainly invoked to escape the Jensen decision, came down on the very same day as the Nogueira decision (April 14, 1930). Nowhere in Nogueira is the Baizley decision spoken of; nowhere in Baizley is Nogueira mentioned. Justices Holmes, Stone and Brandeis dissented in Baizley, but they concurred in Nogueira.

I think the only true meaning that can be taken from Nogueira is that a tort committed against a "railroader" on a car float in navigable waters is maritime, and subject exclusively to the Longshoremen's and Harbor Workers' Compensation Act, regardless of the precise task in which he is engaged. If my interpretation of the Nogueira decision is correct, then it must be overruled in order to permit this plaintiff to recover under the Federal Employers' Liability Act or the Safety Appliance Act. I am not the one to overrule the decision, whether I like it or not.

The motion to dismiss the complaint is granted.

1. Southern Pacific Co. v. Jensen, 1916, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086; see Robinson on Admiralty, pp. 101–109.