## PENNSYLVANIA RAILROAD CO. *v.* O'ROURKE.

No. 60.   Argued December 8, 1952.—Decided January 12, 1953.

*John Vance Hewitt* argued the cause and filed a brief for petitioner.

*Richard C. Machcinski* argued the cause for respondent. With him on the brief was *Herbert Zelenko.*

MR. JUSTICE REED delivered the opinion of the Court.

This certiorari requires us to determine which federal industrial accident statute—the Federal Employers' Liability Act or the Longshoremen's and Harbor Workers' Compensation Act—applies to the circumstances of this case.   The petitioning railroad had employed O'Rourke in its Harismus Cove Yard at Jersey City since 1942 as a "freight brakeman."   He worked as part of a five-man crew making up trains.   Their duties included work on

the petitioner's car floats that moved freight and passenger cars from and to the Yard by water. The accident occurred during the night of January 28, 1948. Having already removed cars from three floats, the crew began to unload one carrying box cars. O'Rourke was required to climb up on each and release the hand-brakes, so that the cars could be pulled off the float by the engine. During the process, he fell from one and sustained the injury which is the basis for this suit. It was brought under the Federal Employers' Liability Act, 35 Stat. 65, 45 U. S. C. § 51 *et seq.*,[1] alleging a faulty brake mechanism maintained in violation of the Safety Appliance Acts, 27 Stat. 531, 45 U. S. C. § 1 *et seq.*, as the causative factor. The District Court granted the railroad's motion to dismiss on the ground that the Longshoremen's and Harbor Workers'

---

[1] 45 U. S. C. § 51:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

Compensation Act, 44 Stat. 1424, 33 U. S. C. § 901 *et seq.*, applied exclusively,[2] 99 F. Supp. 506, but the Court of Appeals reversed on the ground that the Liability Act covered "railroad employees injured while engaged in railroad work on navigable waters." It decided respondent was "not employed in maritime employment . . . within the meaning of the Compensation Act." 194 F. 2d 612, 615. We granted certiorari, 344 U. S. 811, because of an alleged conflict with an earlier decision of this Court, *Nogueira* v. *N. Y., N. H. & H. R. Co.*, 281 U. S. 128.

The need for a federal statute of the Harbor Workers' Act type and scope became obvious after *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, decided in 1917, wherein it was held that neither the Federal Employers' Liability Act nor the state compensation statute applied to a railroad employee engaged in loading a vessel of the company which had no relation to its railroading operations. Specifically, the state act was held inapplicable because the matter fell exclusively within the federal admiralty jurisdiction:

> "The work of a stevedore in which the deceased was engaging is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction." 244 U. S., at 217.

---

[2] 33 U. S. C. § 905:

"The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, . . . ."

The resulting federal statute took the form of a compensation act to assure injured employees who were not seamen a prompt and certain recovery, rather than an employers' liability statute, such as was extended in 1920 to seamen by the Jones Act, 38 Stat. 1185, 46 U. S. C. § 688. A summary of the congressional attempts to bring admiralty law into harmony with modern concepts of the duty of an employer although without fault to carry the burden of industrial accidents, appears in the *Nogueira* case, 281 U. S., at 135–136. These efforts failed to meet the constitutional test of uniformity held essential in admiralty law in order to obviate conflicting requirements in maritime commerce. *Washington* v. *Dawson & Co.,* 264 U. S. 219. They failed because Congress attempted to place legislation on maritime accidents under state compensation laws. After this Court's suggestion in the *Washington* case, 264 U. S., at 227, Congress adopted the valid, exclusive and uniform compensation act now in effect for longshoremen and harbor workers. *Crowell* v. *Benson,* 285 U. S. 22. Seamen preferred to take the risks of the Jones Act. *Nogueira* v. *N. Y., N. H. & H. R. Co., supra,* at 136. This act and the Jones Act provided means for indemnification for injuries for all maritime employees who were beyond the constitutional reach of state legislation. A quarter of a century of experience has not caused Congress to change the plan. The "*Jensen* line of demarcation between state and federal jurisdiction" has been accepted. *Davis* v. *Department of Labor,* 317 U. S. 249, 256. New Jersey could not have enacted statutes granting compensation for respondent's injury on navigable water. Therefore respondent comes within the coverage of that portion of § 903 (a) that includes those outside the reach of state compensation laws.

The Federal Employers' Liability Act, 45 U. S. C. § 51, note 1, *supra,* gives a right of recovery due to defects be-

cause of carrier negligence in, among other equipment, "boats." We need not, however, in this case, determine whether the car float is a "boat" that should be regarded as in substance a part of a railroad's extension. See *Southern Pacific Co.* v. *Jensen, supra,* at 213. It is clear that whether or not the boat is an extension of the railroad under the Liability Act is immaterial. The later Harbor Workers' Act by §§ 903 (a) and 905 covered such injuries on navigable water and made its coverage exclusive. *Nogueira* v. *N. Y., N. H. & H. R. Co., supra,* at 130–131.

Whether or not the Harbor Workers' Act applies to the exclusion of the Employers' Liability Act, by virtue of the provisions of 33 U. S. C. § 905, depends on § 903 which defines its "coverage":

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. . . ." [3]

Section 904 fixes liability for this compensation with the "employer," who in turn is defined by § 902 (4):

"The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock)."

The Court considered these provisions in a similar setting in the *Nogueira* case, *supra.* That case involved a railroad employee injured while loading freight into cars

---

[3] The portion of the section which we have omitted contains certain other conditions to applicability. None apply here. Respondent was not a member of the crew and the vessel was of more than eighteen tons.

located on a moored car float. The Harbor Workers' Act was held to apply. As was pointed out:

"The definition [§ 903 (a)] is manifestly broad enough to embrace a railroad company, provided it has employees who 'are employed in maritime employment, in whole or in part, upon the navigable waters of the United States.' . . . From the standpoint of maritime employment, it obviously makes no difference whether the freight is placed in the hold or on the deck of a vessel, or whether the vessel is a car float or a steamship. A car float in navigable waters is subject to the maritime law like any other vessel." 281 U. S., at 132 and 134.

But respondent contends, in support of the result below, that the cases are distinguishable and that this language does not determine his claim. He emphasizes that Nogueira was engaged in loading the cars. This is pictured as an operation far more similar to the popular conception of a longshoreman's job than his own, which he insists was "railroading." [4]

We are clear, however, that the emphasis on the nature of respondent's duties here misses the mark. The statute applies, by its own terms, to accidents on navigable waters when the employer has any employees engaged in maritime service. The portions of the *Nogueira* opinion quoted bring this railroad company within this category, since its car float operations are there held to be maritime, as they obviously are. Whether the injury occurred to an employee loading freight into cars on the float, as in the *Nogueira* case, or to one like respondent moving

---

[4] The *Nogueira* case was a unanimous decision. On the same day, *Baizley Iron Works* v. *Span*, 281 U. S. 222, was decided with three dissents. An award of state compensation to Span was reversed because as a painter employed in the repair of a completed ship lying in navigable waters, a state compensation statute could not cover him.

loaded cars from a float could make no difference. Both employments are maritime. See *Nogueira* v. *N. Y., N. H. & H. R. Co., supra,* at 134. Besides § 902 (4) is directed at the employer when it speaks of maritime employment, not at the work the employee is doing. The exclusive coverage of §§ 903, 905 extends to an employee of an employer, made liable by § 904, when he is injured, in the course of his employment, on navigable water. The Court of Appeals, we think, is in error in holding that the statute requires, as to the employee, both injury on navigable water and maritime employment as a ground for coverage by the Compensation Act. An injured worker's particular activity at the time of injury determines of course whether he was injured in the course of his employment within § 902 (2), and whether he was a member of the crew of the vessel within the exceptions of §§ 902 (3) and 903 (a)(1). This explains the emphasis on the factor of the individual's job in *Parker* v. *Motor Boat Sales, Inc.,* 314 U. S. 244, 245–246, and *South Chicago Co.* v. *Bassett,* 309 U. S. 251.[5]

The Court of Appeals thought that this Court's *Nogueira* opinion left open, as did the Second Circuit's opinion in *Nogueira,* "that the mere locus of the accident necessarily determines the right." 32 F. 2d 179, at 182. We read the *Nogueira* case differently. There it was said:

> "There was no exclusion of stevedores or of those sustaining injuries upon navigable waters in loading or unloading a vessel unless it was under eighteen tons net. The application of the act in such cases was explicitly made to depend upon the question whether the injury occurred upon navigable waters and recovery therefor could not validly be provided by a state compensation statute." 281 U. S., at 136.

---

[5] *Norton* v. *Warner Co.,* 321 U. S. 565; *Merritt-Chapman & Scott Corp.* v. *Willard,* 189 F. 2d 791, and *Long Island R. Co.* v. *Lowe,* 145 F. 2d 516, fall within a similar category.

Analogous cases lend weight to our conclusion. *Buren v. Southern Pacific Co.*, 50 F. 2d 407, is indistinguishable on its facts.[6] The result in *Parker,* as well, is totally inconsistent with any "duties test." Armistead, the employee there, was a janitor with the motor boat company. He had been ordered to ride in one of the boats during a test trip in order to keep a lookout for hidden objects. 314 U. S., at 246. Compensation under the Harbor Workers' Act could not have been paid in connection with his death if we were to test its applicability by the nature of his regular work. A number of lower court cases are in similar vein. Those we collect in the margin deal with various types of construction and service workers, obviously not themselves engaged in traditional "maritime employment," if one were to look solely to the particular type of job they were engaged for.[7] Each was held to fall within the scope of the statute. Section 902 (4) requires the employer to pay compensation if he has "any" employees so engaged.[8] If, then, the acci-

---

[6] See *Gussie* v. *Pennsylvania R. Co.*, 1 N. J. Super. 293, 64 A. 2d 244; *Richardson* v. *Central R. Co. of N. J.*, 233 App. Div. 603, 253 N. Y. S. 789; *Byrd* v. *N. Y. Central System*, 6 N. J. Super. 568, 70 A. 2d 97. *Zientek* v. *Reading Co.*, 93 F. Supp. 875, is contrary but as to this see our opinion in *Desper* v. *Starved Rock Ferry Co.*, 342 U. S. 187, 190; *Job* v. *Erie R. Co.*, 79 F. Supp. 698, and *Rist* v. *Pittsburgh & Conneaut Dock Co.*, 104 F. Supp. 29.

[7] *Baizley Iron Works* v. *Span*, 281 U. S. 222 (a painter); *De Bardeleben Coal Corp.* v. *Henderson*, 142 F. 2d 481 (member of shore gang); *Travelers Ins. Co.* v. *McManigal*, 139 F. 2d 949 (carpenter); *Travelers Ins. Co.* v. *Branham*, 136 F. 2d 873 (foreman of a concrete pouring gang); *Standard Dredging Corp.* v. *Henderson,* 57 F. Supp. 770 (member of shore gang); *Ford* v. *Parker*, 52 F. Supp. 98 (watchman). This list is illustrative but by no means exhaustive.

[8] *Davis* v. *Department of Labor*, 317 U. S. 249, is an illustration of the difficulty encountered in applying this standard, happily not present in the case at bar. The *Davis* case avoided uncertainty in areas where state and federal statutes might overlap. In the present case we have two federal statutes and a line marking their coverage can be drawn.

dent occurs on navigable waters, the Act must apply if the injured longshoreman was there in furtherance of his employer's business, irrespective of whether he himself can be labeled "maritime." Such are the admitted facts of this case. The Longshoremen's and Harbor Workers' Compensation Act applies.

*Reversed.*

MR. JUSTICE MINTON, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACK, and MR. JUSTICE CLARK join, dissenting.

There is but one question here, and that is whether this respondent was engaged in "maritime employment" at the time of his injury. If he was, then the Longshoremen's and Harbor Workers' Compensation Act applies and not the Federal Employers' Liability Act. That was decided in *Nogueira* v. *New York, N. H. & H. R. Co.*, 281 U. S. 128. In that case, an employee of a railroad company was trucking interstate freight from the dock onto a car float for loading in a car standing on the car float. He was likened to a stevedore. Here this railroad employee was a brakeman engaged in removing freight cars from a car float by the use of an ordinary switch engine. The cars were in interstate commerce. Preparatory to the removal of the cars from the car float, it was this railroad employee's duty to let off the brakes. He alleged that while thus engaged, the railroad's use of a defective brake in violation of the Safety Appliance Act caused him to be thrown from the freight car to the deck of the car float and injured. The car float was upon navigable waters.

Was it maritime employment to get these cars off the car float or was it railroad employment? If this railroad employee had been doing his braking job on land, no one would have thought he was engaged in anything but railroad employment. Does it become maritime employ-

ment because it happened over navigable waters? We think not. The place is the only thing that differentiates the situations. Place is admittedly not enough to make what is braking on land other than braking when done over navigable waters. Not only must we look to the place where the accident happened, but of equal importance is the nature of the employment. The nature of the employment is certainly not maritime. It was an ordinary railroad chore, done by an ordinary railroad brakeman. If this were not so, the train crews on trains being ferried across navigable streams in the United States would be employed in maritime service. With the imagination of the Court's opinion, a train crew, while crossing a bridge with its supports in a navigable stream, would be employed in maritime service.

We would treat this railroad employee as being in law what he was in real life, a railroad brakeman, engaged in interstate commerce and subject to the Federal Employers' Liability Act, and affirm this judgment.