## Valley Towing Company, et al. *v.* Allen.

No. 41028          March 2, 1959          109 So. 2d 538

*Farish, Keady & Campbell,* Greenville, for appellants.

*Crisler, Crisler & Bowling,* Jackson; *Ellis J. Farris,* Vicksburg, for appellee.

54

APPELLANT IN REPLY.

KYLE, J.

This case is before us on appeal by Valley Towing Company, and its insurance carrier, from a judgment of the Circuit Court of Washington County, affirming an order of the Mississippi Workmen's Compensation Commission, awarding death benefits to the appellee as surviving widow of Emory Allen, a deceased employee of the Valley Towing Company, whose death occurred on April 24, 1957.

The record shows that the appellant, Valley Towing Company, is a partnership engaged in the business of transporting crude oil, and other petroleum products and materials from Galveston, Texas, by way of the Intercoastal Canal and the Mississippi River, to points along the Mississippi River as far north as Memphis, Tennessee, by the use of river type boats. At the time of Emory Allen's death the appellant owned and operated several barges and two tugboats which are used in its maritime operations as stated above, one of the tugboats being the Motor Vessel "Ole Miss" of 220 gross tons, and the other being the Motor Vessel "Valto" of 190 tons. The minimum crew employed to operate each of the tugboats and the barges attached thereto on their maritime journeys consisted of two pilots, two engineers, one cook and three deckhands. While on duty the master or pilot and the members of the crew ate, slept

and lived on board the vessel. The master or pilot had no duties to perform on shore.

The deceased, Emory Allen, 57 years of age at the time of his death, was employed by the appellant as a master and pilot. He had been a river man all his life and had worked on river boats prior to his employment by the appellant. Allen was employed by the appellant on March 1, 1952, and was assigned to duty as master and pilot. He had performed his duties on the motor vessel "Valto." While on duty he was in charge of the piloting, and the members of the crew were subject to his command. On February 2, 1957, while aboard the "Valto," as it journeyed southwardly on the Mississippi River near Arkansas City, Allen suffered a heart attack. He was not standing watch at that time, but "merely riding in." He left the boat immediately and was carried to his home in Vicksburg, and was placed under the care of Dr. W. K. Purks. He was off duty for a period of several weeks because of his illness. His condition improved, however, and with the approval of his doctor he was called back into service on April 20, 1957, and placed in charge of the towboat "Ole Miss," which was proceeding northwardly at that time with a cargo of crude oil. The cargo had been loaded at Venice, Louisiana; and the towboat was bound for an oil refinery at Memphis. Allen's instruction were to relieve the regular captain on the "Ole Miss" and bring the boat on in to Greenville "and tie her up," and those instructions were carried out. The "Ole Miss" reached Greenville with its cargo of crude oil about 3:00 o'clock A. M. on Sunday, April 21, 1957. The appellant had received notice that the tanks at the Memphis refinery were full, and the "Ole Miss" cargo could not be unloaded immediately. The boat was therefore ordered to lay by at Greenville until further orders were received. The boat was docked in Lake Ferguson and remained there until the time set for its departure at 3:00 o'clock

A. M., on April 24, 1957. Shortly before the time set for departure, Allen was found dead in his cabin aboard the towboat. He had suffered a fatal heart attack.

The testimony shows that Allen had served on the motor vessel "Valto" most of the time that he worked for the Valley Towing Company, and that during the three days layover at Greenville he had made several visits to the "Valto," which was undergoing repairs at Greenville at that time, and while on board had actively assisted the workmen in putting up a plywood wall in the cabin of the boat. He had climbed the steps of the "Valto" several times the day before his death, and when he returned to the "Ole Miss" about 4 o'clock P. M. he stated that he was exhausted—"pooped out." He seemed to feel better, however, at suppertime and ate a hearty supper. He then went back to the "Valto" with Captain Percy LeMay "to straighten up the time sheet," and after that item of business had been attended to he retired to his cabin on the "Ole Miss" and was not seen again until his lifeless body was found on the floor of the cabin several hours later.

During the hearing before the attorney-referee, it was contended on behalf of the employer and its insurance carrier that the deceased was a seaman engaged in maritime employment aboard his vessel in navigable waters at the time of his death, and that no recovery of death benefits could be had under the Mississippi Workmen's Compensation Act; and that the claimant's exclusive remedy was that provided by the Merchant Marine Act of 1920, Title 46, Section 688, United States Code Annotated, commonly known as the "Jones Act." It was also contended that, even if the Mississippi Workmen's Compensation Act were applicable, the proof failed to show that the decedent's death was due to any accidental injury arising out of or in course of his employment by the Valley Towing Company.

The attorney referee found that Allen was employed as a pilot or master on March 1, 1952 and continued in such employment until his death. But the attorney referee was of the opinion that the "Jones Act" applied only in cases where a seaman had sustained an injury in maritime employment as a result of the employer's negligence, and since no negligence had been shown, the "Jones Act" was not applicable in this case; and that since the evidence showed that Allen's heart attack was causally related to his employment the claimant was entitled to death benefits under the Mississippi Workmen's Compensation Act. An order was therefore entered awarding death benefits to the claimant. Upon review by the full Commission the Commission by majority vote approved the award made by the attorney-referee. One member of the Commission filed a dissenting opinion. The circuit court on appeal entered a judgment affirming the order of the Commission.

Two questions are presented for our decision on this appeal: (1) Whether the Mississippi Workmen's Compensation Commission had jurisdiction of the claim, and (2) Whether, if the Commission had jurisdiction, there is sufficient evidence to support the findings of the attorney-referee and the Commission that Allen's death resulted from an injury arising out of and in the course of his employment.

In view of the conclusion we have reached on the first point, it will not be necessary for us to consider the question as to the causal relation between Allen's death and his employment.

Section 6998-03 Code of 1942 Recompiled (Section 3 of Chapter 354, Laws of 1948, as amended by Section 2 of Chapter 12, Laws of 1950), provides that, "This act shall not apply to transportation and maritime employments for which a rule of liability is provided by the laws of the United States."

Such rule of liability has been provided by the Act of Congress, commonly known as the "Jones Act"; and that Act, in our opinion, is controlling in this case.

The Merchant Marine Act of 1920, Title 46, section 688, United States Code Annotated, commonly known as the "Jones Act," provides as follows:

"Recovery for injury to or death of seaman—

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in the case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located. Mar. 4, 1915, c. 153, Sec. 20, 38, Stat. 1185; June 5, 1920, c. 250, sec. 33, 41 Stat. 1007."

Prior to the decision by the United States Supreme Court in the case of Southern P. Co. v. Jensen, 244 US 200, 61 L ed 1086, 37 S Ct 524, LRA1918C 451, Ann Cas 1917E 900, it was generally held by the state courts that workmen's compensation acts were applicable to cases involving maritime contracts or torts, upon the theory that the admiralty courts did not have exclusive jurisdiction in such cases. But the opinions of the state courts in those cases were nullified by the decision of the Supreme Court in the Jensen case, which was decided in

1917. In that case the Court held that, under the provisions of Article III, par. 2, and Article I, par. 8, of the Constitution of the United States, Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country, and that the New York Workmen's Compensation Act could not constitutionally be applied to a stevedore injured on board ship while engaged in unloading cargo at a New York pier. The case was decided by a divided Court, and the opinion rendered has been severely criticized by members of the Court in later cases dealing with the same or related subject matters; but the principle laid down in that case has been adhered to in the later decisions. See especially Nogueira v. New York, N. H. & H. R. Co. (1930) 281 U. S. 128, 50 S. Ct. 303, 74 L. Ed. 754; Lindgren v. United States (1930) 281 U. S. 38, 50 S. Ct. 207, 74 L. Ed. 686; Davis v. Department of Labor (1942), 317 U. S. 249 63 S. Ct. 225, 87 L. Ed. 246; O'Donnell v. Great Lakes Dredge & Dock Co. (1943) 318 U. S. 36, 63 S. Ct. 488, 87 L. Ed. 596; Norton v. Warner Co. (1944) 321 U. S. 565, 64 S. Ct. 747, 88 L Ed. 931; Pennsylvania R. Co. v. O'Rourke (1953) 344 U. S. 334, 73 S. Ct. 302, 97 L Ed. 367.

In discussing the far-reaching effects of the decision in the Jensen Case, Larson, in his Workmen's Compensation Law, Vol. 2, par. 89.21, says: ''The doctrine that the maritime law's uniformity must be preserved at all costs was itself brought to full flower by this same decision, although earlier cases contained some adumbration of it. So strong and uncompromising was the Supreme Court's devotion to this principle of uniformity that it actually struck down two attempts by Congress to undo the effect of the Jensen decision by express legislation preserving to claimants 'the rights and remedies under the Workmen's Compensation Law of any state' in maritime situations, the second attempt differing from

the first in that it excepted masters and members of crews.''

In Nogueira v. New York, N. H. & H. R. Co. (1930), 281 U. S. 128, 50 S. Ct. 303, 74 L. Ed. 754 the record showed that Nogueira was injured while employed by the railroad company as one of a gang of freight handlers in loading freight into railroad cars on a car float lying in navigable waters at a pier. The float was a vessel of 500 tons belonging to the company and was used in the transportation of such cars. The injury occurred on the float while Nogueira was handling a piece of interstate freight. The Court held that the car float, being in navigable waters, was subject to the maritime law like any other vessel; and since the injury was within the exclusive admiralty and maritime jurisdiction, a recovery for it through workmen's compensation proceedings could not validly be provided by state law, citing Southern Pacific Co. v. Jensen, supra. The Court also found that under the provisions of Section 3 of the Longshoremen's and Harbor Worker's Compensation Act Nogueira was excluded from the benefits of that act.

In O'Donnell v. Great Lakes Dredge & Dock Co. (1943), 318 U. S. 36, 63 S. Ct. 488, 87 L. Ed. 596, the court held that a deckhand in the service of a vessel plying navigable waters in interstate commerce, who was ordered by the master to go ashore and assist in repairing, at its connection with a land pipe, a conduit through which the vessel was unloading cargo, and who while thus engaged was injured by the negligence of a fellow servant, had a right of recovery under the ''Jones Act,'' 46 U. S. C. Sec. 688, which gives a right of action to a seaman injured ''in the course of his employment.'' And the court in its opinion in that case said: ''The right of recovery in the ''Jones Act'' is given to the seaman as such, and, as in the case of maintenance and cure, the admiralty jurisdiction over the suit depends not on the place where the injury is inflicted but on the nature of the service

and its relationship to the operation of the vessel plying in navigable waters."

In Pennsylvania Railroad Co. v. O'Rourke (1953), 344 U. S. 334, 73 S. Ct. 302, 97 L Ed. 367, this record showed that a freight brakeman for the railroad company, whose duties included work aboard the company's car floats moored in navigable waters, had been injured on a car float while releasing allegedly defective hand-brakes on a freight car, which was being unloaded from the car float by a switch engine. The court held that the employee's remedy was under the Longshoremen's and Harbor Workers' Compensation Act exclusively, and not under the Federal Employers' Liability Act. The court in discussing the Longshoremen's Act in that case said:

"The need for a federal statute of the Harbor Workers' Act type and scope became obvious after Southern Pacific Co. v. Jensen, 244 U. S. 205, decided in 1917, wherein it was held that neither the Federal Employers' Liability Act nor the state compensation statute applied to a railroad employee engaged in loading a vessel of the company which had no relation to its railroading operations.

"* * * After this Court's suggestion in the Washington case, 264 U. S., at 227, Congress adopted the valid, exclusive and uniform compensation act now in effect for longshoremen and harbor workers. Crowell v. Benson, 285 U. S. 22. Seamen preferred to take the risks of the Jones Act. Nogueira v. N. Y. N. H. & H. R. Co., supra, at 136. This act and the "Jones Act" provided means for indemnification for injuries for all maritime employees who were beyond the constitutional reach of state legislation. A quarter of a century of experience has not caused Congress to change the plan. The Jensen line of demarcation between state and federal jurisdiction has been accepted. Davis v. Depart-

ment of Labor, 317 U. S. 249, 256. New Jersey could not have enacted statutes granting compensation for respondent's injury on navigable water. Therefore respondent comes within the coverage of that portion of Sec. 903 (a) that includes those outside the reach of state compensation laws."

██ ██ From the cases cited above, it appears to be settled that a state compensation act, even though elective, cannot be made applicable to injuries sustained by workmen employed under maritime contracts where the particular employment is of a maritime nature and where the injury occurs on water within admiralty jurisdiction, except in the case of matters of purely local concern, the regulation of which by the state will work no material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony or uniformity of that law in its international or interstate relations. 58 Am. Jur. P. 633, Workmen's Compensation, Par. 79. See also cases cited.

██ ██ The appellee's attorneys, however, argue that the decision of the attorney-referee and the commission in this case should be upheld notwithstanding the Jensen line of demarcation between state and federal jurisdiction, since the matter is of mere local concern and regulation by the state would work no material prejudice to the characteristic features of the maritime law, or that the case should be treated as a "twilight zone of jurisdiction" case, as that term was used in Davis v. Department of Labor, supra. But there are in our opinion no facts in the record which would justify the application of the doctrine of local concern, or the "twilight zone of jurisdiction," rule, in this case. It is undisputed that Allen was a "seaman" within the meaning of the "Jones Act," and that he was actively engaged at the time of his death in the performance of his duties as master and pilot on a tugboat engaged in interstate commerce on the navigable waters of the United States.

The only verbal test given in the cases which have dealt with the question, as to when a matter is of "local concern" so that the state law may be applied, is that, "if the employment has no direct relation to navigation and commerce, if state regulation will not prejudice the uniformity of the maritime law, then state laws may be applied." Gahagan Const. Corp. v. Armao (1948) 165 F. 2d 301. If that test is applied to the facts in the case that we have here it seems clear that the matter cannot be treated as of "mere local concern."

The appellee's attorneys cite, in support of their contention that the "twilight zone" theory should be applied, the case of Maryland Casualty Co. v. Toups, 172 F. 2d 542, which was decided by the Court of Appeals of the Fifth Circuit in 1949. But, even if the decision of the court in that case be accepted as sound, we think the rule stated in the opinion rendered is not applicable to the facts in this case. The record in the Toups case, as pointed out in the opinion, showed that the deceased at the time of his death was working upon the dock making fenders for the use of his small boat; that he hauled no interstate or foreign commerce; and that "neither his vessel nor his work affected the intricate relations that involve the ship, crew, master, owner, cargo, shipper, consignee, or responsibility or lack of it, under the law of the sea." In the case that we have here the record shows that the deceased had spent the three days of the lay-over at Greenville on board the boats which were owned by his employer, and which were used regularly in the transportation of cargoes of crude oil and other petroleum products in interstate commerce. He was master and pilot of one of the boats and had a ship's crew under his supervision and control.

It is true as stated by the Circuit Court of Appeals in the Gahagan Construction Corporation case, supra, that the Supreme Court, in Davis v. Department of Labor, supra, has indicated that within a shadowy area where

it is unclear which law should apply, if either the Longshoremen's Act or a state act is applied, the result will be upheld. But in no case in the Supreme Court, in which the injured person was a seaman performing a seaman's duties on navigable waters, has state law been held applicable.

██ █ The deceased in this case, at the time of his death was engaged in transportation and maritime employment for which a rule of liability was provided by the laws of the United States, and in our opinion the Mississippi Workmen's Compensation Commission had no jurisdiction in the matter. The appellee's attorneys argue in their brief that the appellants are estopped from raising the question of jurisdiction in the case, however, because of Section 6998-40, Mississippi Code of 1942 Recompiled, which provides that the acceptance of a premium on a policy securing to an employee compensation, shall estop the carrier from pleading that employment is not covered under the act. But in view of the fact that the employment was maritime employment and not subject to the Mississippi Workmen's Compensation Act, we think that the statutory estoppel provided in Section 6998-40 does not apply.

For the reasons stated above the judgment of the lower court is reversed, and the order of the commission awarding compensation (death benefits) to the appellee is set aside and judgment rendered here in favor of appellants.

Reversed and judgment rendered in favor of appellants.

*McGehee, C. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.