Oscab Mtjbov, J.
The within action was instituted in this court for property damage in the sum of $572.40 due to defendants’ negligence. Trial was held on the above-entitled action on the 24th day of January, 1973, at which time decision was reserved and one week allowed for briefs. Plaintiff herein submitted his briefs accordingly.
The court makes the following findings of fact:
At approximately 6:45 p.m. on June 18, 1971, the plaintiff was proceeding in a westbound direction in his vessel Ricky-Jo in the State channel, off the Captree Boat Basin in the Town of Babylon. The defendant’s vessel was proceeding in the same direction as the plaintiff and was ahead of, and slightly to the starboard side of, plaintiff’s vessel. Plaintiff’s vessel was not attempting to overtake or pass the defendants’ vessel. The defendant executed a sharp port side turn and slowed his vessel to almost a complete stop causing his placement directly in front of plaintiff’s vessel and another vessel operated by one Alvin Mannella, who was proceeding in the opposite direction (eastbound). At no time did the defendant signal his turn or give any warning of such action. The defendant’s turn caused the plaintiff to take evasive maneuvers to his starboard side to avoid collision and for Mr. Mannella to take evasive action to his port side causing collision of his vessel with that of the plaintiff’s.
The court concerns itself with two pertinent questions. The first is jurisdiction of the District Court to entertain the matter herein and the second, whether the “ no contact ” rule applies in cases of this nature.
The test of admiralty jurisdiction in cases of tort is the locus of the accident, and if that is found to have occurred upon navigable waters, admiralty has exclusive jurisdiction save a right to sue in common-law courts where the common law is competent to give a remedy. (Richardson v. Central R. R. Co. of N. J., 233 App. Div. 603.) In Nelson v. Allis (181 Misc. 310), the court entertained an action involving the collision of two vessels. *70 The theory therein was the recognition by the court of common-law action to recover for personal injuries. Such common-law jurisdiction necessitates a definition herein between right and remedy. “ A right is a well-founded or acknowledged claim. A remedy is a means employed to enforce a right or redress an injury. Under the saving clause [U. S. Code, tit. 1, § 109] a right sanctioned by the maritime law may be enforced through any appropriate remedy recognized at common law. So the state must follow the substantive maritime law, but it can enforce such law to any common-law remedy. Accordingly, the state court has jurisdiction to entertain proceedings in personam against one who has violated a maritime contract or committed a maritime tort, since common-law courts have from time immemorial entertained such proceedings.” (1 Carmody-Wait 2d, New York Practice, §. 2:98, p. 118; see, also, Baird v. Daly, 57 N. Y. 236, 247.) Thus, the action herein being one of maritime tort is nonetheless within the province of1 this court’s jurisdiction insofar as the remedy available to plaintiff is concerned. Of course, the substantive rights of the parties must follow Federal pronouncement. (Maloney v. State of New York, 2 A D 2d 195, affd. 3 N Y 2d 356.)
Those sections of the United States Code which the court finds pertinent herein will appear hereunder in context.
Section 206 of title 33 of the United States Code proscribes that “where, by any of these rules, one of the two vessels.is to keep out of the way, the other shall keep her course and speed.” The situation presented permits this court to note that where an overtaking situation is involved, the privileged vessel, defendant’s must maintain its course and speed. Thus, a sudden sheer to port by the privileged vessel without signaling, placed the “ burdened ”, plaintiff’s vessel in a perilous or in extremis position. (Ocean S. S. Co. v. United States, 39 F. 2d 553.) It would be wrong to criticize the evasive maneuvers of the plaintiff in seeking to avoid collision.
More direct" under the pattern herein is section 221 of title 33 of the United- States Code which provides that ‘ ‘ Nothing in these ruleS/Shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of * * * any neglect
to keep a proper lookout, or of1 the neglect of any precaution wMdn may be required by the ordinary practice of seamen, or by the special circumstances of the case.” The statute was the "basis of careful examination by the court in Stevens v. United States Lines Co. (187 F. 2d 670, 674, 675) wherein it was stated: “In keeping with the statutory scheme we shall not attempt *71 to put a gloss upon the statute by laying down a rigid legal rule of general application with respect to what constitutes a * proper lookout ’ in a particular situation, or as to the specific circumstances under which some sort of lookout must be kept. * * * we think it preferable to state as a general proposition that the article in question requires a lookout in every direction from which danger may reasonably be expected to arise, and that the quality and diligence of the lookout required depends upon the degree, and imminence of the danger reasonably to be anticipated.” One operating a small vessel in a narrow channel, heavily trafficked is obligated to glance around and keep proper lookout on all sides. This is especially so when a change of direction is about to be made in midcourse. (Id p. 675.)
In final analysis of the instant matter, it is incumbent upon the court to consider the ‘1 no contact ’ ’ aspect of the case.
In American President Lines v. Towboat Seneca (261 F. Supp. 800, affd. 384 F. 2d 511) the facts indicate the applicability of ,the “ no contact ” doctrine to maritime torts. Though the court found contributory negligence against the plaintiff, it nonetheless apportioned the damages. The facts related are that upon entering the channel, the towboat Seneca caused an obstruction of passage causing the S. S. President Grant to veer from its course and do damage to a junction buoy light. The court in holding the defendant liable, though partially, noted that the acts of the Seneca created a dangerous situation in extremis. No contact was present yet the liability therein existed. More definitive of the rule is the declaration in The Pennsylvania (86 U. S. 125, 136) wherein the court held: “ But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster.”
Generally, the burden is upon the ship to prove that it could not have been her fault tó have caused the collision (id). It is the risk of collision and not the collision itself which must be avoided. (United States v. M/V Mary E. Stapp, 335 F. Supp. 975 [S. D., Tex.].)
Defendant’s conduct constituted an embarrassment to navigation, putting the vessel owned by the plaintiff and the vessel owned by Alvin Mannella into an in extremis situation resulting in their ultimate ‘1 dance of death” whereby they eventually collided with each other as the defendant went merrily on his reckless way.
Accordingly, the court finds for the plaintiff in the sum of $572.40.