129 So.2d 729

Herbert S. ELLIS

v.

TRAVELERS INSURANCE COMPANY et al.

No. 45452.

April 24, 1961.

Rehearing Denied May 29, 1961.

Zelden & Zelden, New Orleans, for plaintiff-appellant.

John V. Baus of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendants-appellants-respondents.

HAMLIN, Justice.

Acting under our supervisory jurisdiction (Article VII, Section 11, Louisiana Constitution of 1921, LSA) we granted certiorari from a judgment of the Court of Appeal, Fourth Circuit (123 So.2d 780), which reversed a judgment of the trial court overruling defendants' exception to the jurisdiction of the court ratione materiae. This case was consolidated for argument with No. 45,455, Stepter v. T. Smith & Sons, Inc., 241 La. 465, 129 So.2d 740,—a like suit arising out of an accident similar to the one herein involved—in which certiorari was granted in order that we might review the judgment of the Court of Appeal, Fourth Circuit (123 So.2d 788), affirming a judgment of the trial court which maintained the defendant's exception to the jurisdiction of the court ratione materiae.

Plaintiff Herbert S. Ellis, employed as a longshoreman for Standard Stevedoring Company, Inc., sustained injuries on January 31 or February 1, 1958, being struck by a load of cotton, while working on board the S. S. Steel Artisan in the No. 2 Hatch. The vessel was docked in the Mississippi River at the Poland Street Wharf in the City of New Orleans. Plaintiff's suit for total disability was brought against his employer and its insurer, the Travelers Insurance Company, under the Louisiana Workmen's Compensation Act.

Defendants urged an exception to the jurisdiction of the trial court ratione materiae, averring that the court was without jurisdiction for the reason that plaintiff's sole remedy was under the Federal Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq. They answered plaintiff's petition, denying many of its allegations and averring that plaintiff had been paid compensation under the Longshoremen's and Harbor Workers' Compensation Act at the rate of $54 per week for a period of twenty weeks and six days, based upon temporary, total disability; defendants prayed that plaintiff's suit be dismissed at his cost.

The trial court, after overruling defendants' exception to the jurisdiction ratione materiae, rendered judgment for total disability in favor of plaintiff; the Court of Appeal reversed the trial court's judgment on the exception; and, this matter has been submitted for our review.

In Case No. 45,455, Stepter v. T. Smith & Sons, Inc., 241 La. 465, 129 So.2d 740, plaintiff William Stepter sustained injuries on March 27, 1957, while working as a longshoreman, unloading bulk iron by means of a scoop, aboard (in the hold) the Vessel S. S. Orland (registered in Bergen, Norway, and engaged in interstate and/or foreign

commerce) afloat on navigable waters, either the Mississippi River or the Industrial Canal. Stepter brought suit for total disability against his employer, T. Smith and Sons, Inc., under the Louisiana Workmen's Compensation Act.

In Stepter's case the trial court maintained an exception to its jurisdiction ratione materiae filed by the defendant, holding that the matter came within the Federal Maritime jurisdiction; the Court of Appeal affirmed the judgment of the trial court; and, the matter has been submitted for our review. Although a separate decree will be rendered therein, the reasoning herein applies thereto.

Jurisdiction is the sole issue presented for our determination. Must longshoremen, injured aboard ocean-going vessels, afloat on navigable waters and engaged in interstate commerce, while working in the course of maritime employment, seek redress under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. § 901 et seq.) or under the Louisiana Workmen's Compensation Act (LSA–R.S. 23:1021 et seq.)? Did the injuries suffered by plaintiffs occur in the so-called "Twilight Zone,", thereby entitling them to select the jurisdiction of their choice?

In order to answer the questions which we have propounded to ourselves, we feel compelled to review the line of jurisprudence demarcating between Federal and State jurisdictions.

Going back to the year 1916, we find the parent case of Southern Pacific Company v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L. Ed. 1086, written by Mr. Justice McReynolds.

Christen Jensen, an employee of the Southern Pacific Company,[1] just prior to his death was operating a small electric freight truck; his duties consisted in driving the truck into the steamship El Oriente, where it was loaded with cargo, then driving the truck out of the vessel upon a gangway connecting the vessel with Pier 49, North River, New York City, and thence upon the pier, where lumber was unloaded from the truck. While Jensen was backing his truck into a hatchway of the steamship, he failed to lower his head, and his head struck the ship at the top line, throwing his head forward and causing his chin to hit the lumber in front of him. His neck was broken, and he met his death.

The Workmen's Compensation Commission of New York, acting under State statute, awarded the wife of the deceased and

1. The business of the Southern Pacific Company in New York consisted at the time of the accident in carrying passengers and merchandise between New York and other states. Jensen's work consisted solely in moving cargo destined to and from other states. Southern Pacific Company was incorporated in Kentucky; it owned and operated a steamship, El Oriente, but was principally a common carrier by railroad.

his children compensation. Southern Pacific Company objected to the award upon the grounds that the State act did not apply because the workman was engaged in interstate commerce; it argued that the injury was one with respect to which Congress may establish and had established a rule of liability.

In holding that the matter was without State jurisdiction, the United States Supreme Court stated that by Section 9 of the Judiciary Act of 1789, the district courts of the United States were given exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it. It held [244 U.S. 205, 37 S.Ct. 528]:

"The work of a stevedore, in which the deceased was engaging, is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction. * * *

"If New York can subject foreign ships coming into her ports to such obligations as those imposed by her Compensation Statute, other states may do likewise. The necessary consequence would be destruction of the very uniformity in respect to maritime matters which the Constitution was designed to establish; and freedom of navigation between the states and with foreign countries would be seriously hampered and impeded. * * * The legislature exceeded its authority in attempting to extend the statute under consideration to conditions like those here disclosed. So applied, it conflicts with the Constitution and to that extent is invalid.

"Exclusive jurisdiction of all civil cases of admiralty and maritime jurisdiction is vested in the Federal district courts, 'saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it.' The remedy which the Compensation Statute attempts to give is of a character wholly unknown to the common law, incapable of enforcement by the ordinary processes of any court, and is not saved to suitors from the grant of exclusive jurisdiction. * * * And finally, this remedy is not consistent with the policy of Congress to encourage investments in ships, manifested in the Acts of 1851 * * * which declare a limitation upon the liability of their owners. * * *" See, Peters v. Veasey, 251 U.S. 121, 40 S.Ct. 65, 64 L.Ed. 180. Cf. Chelentis v. Luckenbach Steamship Co., Inc., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171.

Congress amended the Judicial Code in 1917, in an endeavor to afford maritime workers redress under State Compensation Laws in case of injuries.

In 1920, in the case of Knickerbocker Ice Company v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834, the Supreme Court of the United States (Mr. Justice McReynolds, the organ of the Court) held the amendment unconstitutional as applied to the deceased. Therein, William M.. Stewart, while employed by Knickerbocker Ice Company as a bargeman and doing work of a maritime nature, fell into the Hudson River and drowned August 3, 1918; thereafter, his widow was allowed compensation under the New York Compensation Law. The United States Supreme Court found that the Court of Appeals of New York (226 N.Y. 302, 123 N.E. 382) was in error in approving the award under the Act of Congress of 1917.[2] The following syllabus correctly recites the holding of the case:

"Congress exceeded its constitutional power to legislate concerning rights and liabilities within the maritime jurisdiction, and remedies for their enforcement, by attempting, as it did in the Act of October 6, 1917, to permit the application of Workmen's Compensation Laws of the several states to injuries within the admiralty and maritime jurisdiction, thus virtually destroying the harmony and uniformity which the Constitution not only contemplated, but actually established."

In 1922, in the cases of Grant Smith-Porter Ship Company v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, and State Industrial Commission of State of New York v. Nordenholt Corporation, 259 U.S. 263, 42 S.Ct. 473, 474, 66 L.Ed. 933, the United States Supreme Court (Mr. Justice McReynolds, the organ of the Court) permitted recovery under State Compensation Laws; in one instance because of the

2. "Act Oct. 6, 1917, chap. 97, 40 Stat. at L. 395 [Comp.Stat. Sec. 991(3), Fed. Stat.Anno.Supp.1918, p. 401].

"That clause three of section twenty-four of the Judicial Code is hereby amended to read as follows:

" ' "Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants the rights and remedies under the workmen's compensation law of any state; of all seizures on land or waters not within admiralty and maritime jurisdiction; of all prizes brought into the United States; and of all proceedings for the

condemnation of property taken as prize."

" 'Sec. 2. That clause three of section two hundred and fifty-six of the Judicial Code is hereby amended to read as follows:

" ' "Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants the rights and remedies under the workmen's compensation law of any state." ' " From footnote, Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 157, 40 S.Ct. 438, 439, 64 L.Ed. 834, 838.

locale of the work and in the other because the work was local in nature.

In the Nordenholt case, supra, a long-shoreman, acting in the scope of his employment on the dock, slipped and fell on the dock and died from his injuries. In allowing recovery under the State Compensation Act, the Court stated:

"When an employee working on board a vessel in navigable waters, sustains personal injuries there, and seeks damages from the employer, the applicable legal principles are very different from those which would control if he had been injured on land while unloading the vessel. In the former situation the liability of employer must be determined under the maritime law; in the latter, no general maritime rule prescribes the liability, and the local law has always been applied. The liability of the employer for damages on account of injuries received on shipboard by an employee under a maritime contract is matter within the admiralty jurisdiction; but not so when the accident occurs on land.

\* \* \* \* \* \*

"Insana was injured upon the dock, an extension of the land \* \* \* and certainly prior to the Workmen's Compensation Act, the employer's liability for damages would have depended upon the common law and the state statutes. Consequently, when the Compensation Act superseded other state laws touching the liability in question, it did not come into conflict with any superior maritime law. And this is true whether awards under the act are made as upon implied agreements or otherwise. The stevedore's contract of employment did not contemplate any dominant Federal rule concerning the master's liability for personal injuries received on land. In Jensen's Case, rights and liabilities were definitely fixed by maritime rules, whose uniformity was essential. With these the local law came into conflict. Here no such antagonism exists. There is no pertinent Federal statute; and application of the local law will not work material prejudice to any characteristic feature of the general maritime law. \* \* \*"

In the Rohde case, supra, Rohde was injured while working on a partially completed vessel. The Court held that the contract for constructing "The Ahala" was non-maritime, and that although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment nor his activities at the time had any direct relation to navigation or commerce. The Court further held that both the employer and employee had accepted the features of the

Oregon Workmen's Compensation Act.[3] It stated, "The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this Court that it must now be treated as settled. * * *" [257 U.S. 469, 42 S.Ct. 158].

In 1922, Congress passed an act (42 Stat. at L. 634, Comp.Stat. Sec. 991(3), Fed.Stat. Anno.Supp.1922, p. 225, 28 U.S.C.A. § 1333), whereby it again attempted to give to claimants of compensation, for injuries suffered during the course of admiralty or maritime work, relief under State Workmen's Compensation Laws.

This 1922 Act of Congress was declared unconstitutional by the U. S. Supreme Court (Mr. Justice McReynolds, organ of the Court), in 1924, in the case of State of Washington v. W. C. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 305, 68 L.Ed. 646. In this case, questions were presented as to whether one engaged in the business of stevedoring, whose employees worked only on board ships in the navigable waters of Puget Sound, could be compelled to contribute to the accident fund provided for by the Workmen's Compensation Act of Washington because of the passage of the 1922 Act, supra; and, whether Workmen's Compensation could be awarded for the death of a workman killed while actually engaged in maritime work, discharging cargo, under maritime contract, upon a vessel moored at her dock in San Francisco Bay. The Court answered negatively, stating:

"This cause presents a situation where there was no attempt to prescribe general rules. On the contrary, the manifest purpose was to permit any state to alter the maritime law and thereby introduce conflicting requirements. To prevent this result the Constitution adopted the law of the sea as the measure of maritime rights and obligations. The confusion and difficulty, if vessels were compelled to comply with the local statutes at every port, are not difficult to see. Of course, some within the states may prefer local rules; but the Union was formed with the very definite design of freeing maritime commerce from intolerable restrictions incident to such control.

3. " * * * And as both parties had accepted and proceeded under the statute by making payments to the Industrial Accident Fund it cannot properly be said that they consciously contracted with each other in contemplation of the general system of maritime law. Union Fish Co. v. Erickson, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261. Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations. * * *"

The subject is national. Local interests must yield to the common welfare. The Constitution is supreme."

In 1927, Congress passed the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. Section 903 provided:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—

"(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; or

"(2) An officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof."

In Nogueira v. New York, New Haven & Hartford Railroad Company, 281 U.S. 128, 50 S.Ct. 303, 305, 74 L.Ed. 754, the U. S. Supreme Court, in speaking of the above act, stated, "When the bill which became the Longshoremen's and Harbor

Workers' Compensation Act was pending in Congress, the importance of the policy of compensation acts, and their advantages in providing for appropriate compensation in the case of injury or death of employees, without regard to the fault of the employer, were distinctly recognized. * * There was no exclusion of stevedores or of those sustaining injuries upon navigable waters in loading or unloading a vessel unless it was under eighteen tons net. The application of the act in such cases was explicitly made to depend upon the question whether the injury occurred upon navigable waters and recovery therefor could not validly be provided by a state compensation statute." See, also, South Chicago Coal & Dock Company v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Diomede v. Lowe, 2 Cir., 87 F.2d 296; Moran Bros. Contracting Co. v. Diomede, 301 U.S. 682, 57 S.Ct. 783, 81 L.Ed. 1340.

The Nogueira case, supra, recognized the principle that the locale of the injury determined the jurisdiction of an action for compensation. The Court held that the Longshoremen's and Harbor Workers' Compensation Act afforded an exclusive remedy to a freight handler who suffered personal injuries while engaged in loading freight into cars on a car float, lying in navigable waters, used as an adjunct to railroad transportation in interstate commerce.

In John Baizley Iron Works v. Span, 1930, 281 U.S. 222, 50 S.Ct. 306, 307, 74 L.Ed. 819, Mr. Justice McReynolds, again the organ of the Court, held that the provisions of a State Workmen's Compensation Act did not apply to an employee of one engaged in making repairs to a *completed vessel* lying in navigable waters. The Court made the pertinent statement:— "What work has direct relation to navigation or commerce must, of course, be determined in view of surrounding circumstances as cases arise."

In 1940, Rodney Rhinehart was drowned when he fell into the Mississippi River from a barge—owned by his employer, T. Smith & Son, Inc.—which he was compelled to traverse in leaving the S. S. Ada O, where he had been engaged in work as a longshoreman. An action for damages under Article 2315 of the Revised Civil Code of Louisiana–LSA, or, in the alternative, for compensation under the Louisiana Employers' Liability Act, or, further alternatively, under the Merchant Marine Act, was filed by the deceased's surviving brother and sister. The Court of Appeal, Rhinehart v. T. Smith & Son, 14 So.2d 287, 292, (Judge McCaleb, organ of the court), in affirming the judgment of the trial court which had sustained the defendant's plea to the jurisdiction and dismissed the plaintiffs' suit, found, "Thus, it is apparent that plaintiffs have no right of action to sue for the death of their brother under Article 2315 of the Civil Code, since this right was specifically superseded by Congress in the Longshoremen's & Harbor Workers' Compensation Act. * * *"

At the end of 1942, the "Twilight Zone" doctrine emerged. This doctrine enabled an injured waterfront worker to elect between the Federal or State remedies in doubtful cases.

In the case of Davis v. Department of Labor and Industries of State of Washington, 317 U.S. 249, 63 S.Ct. 225, 227, 87 L.Ed. 246, petitioner's husband, a structural steelworker, was drowned in the Snohomish River while working as an employee of the Manson Construction and Engineering Company, a contributor to the Workmen's Compensation Fund of the State of Washington. Contributions of Washington employers to this fund were compulsory in certain types of occupations, including the job for which the deceased had been employed, dismantling an abandoned drawbridge. The U. S. Supreme Court reversed the Washington Supreme Court which held that the State could not, consistently with the Federal Constitution, make an award under its State Compensation Law. In writing the opinion of the Court (1942), Justice Black stated:

"Harbor workers and longshoremen employed 'in whole or in part upon the navigable waters' are clearly protected by this Federal Act; but, employees such as decedent here occupy that

shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation. * * *

* * * * * *

"The horns of the jurisdictional dilemma press as sharply on employers as on employees. In the face of the cases referred to above, the most competent counsel may be unable to predict on which side of the line particular employment will fall. The employer's contribution to a state insurance fund may therefore wholly fail to protect him against the liabilities for which it was specifically planned. If this very case is affirmed, for example, the employer will not only lose the benefit of the state insurance to which he has been compelled to contribute and by which he has thought himself secured against loss for accidents to his employees; he must also, by virtue of the conclusion that the employee was subject to the federal act at the time of the accident, become liable for substantial additional payments. He will also be subject to fine and imprisonment for the misdemeanor of having failed, as is apparently the case, to secure payment for the employee under the federal act. 33 U.S.C.A. Secs. 938, 932. * * *

* * * * * *

"There is, in the light of the cases referred to, clearly a twilight zone in

which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. * * *

* * * * * *

" * * * Under all the circumstances of this case we will rely on the presumption of constitutionality in favor of this state enactment; for any contrary decision results in our holding the Washington act unconstitutional as applied to this petitioner. A conclusion of unconstitutionality of a state statute can not be rested on so hazardous a factual foundation here, any more than in the other cases cited.

"Giving the full weight to the presumption, and resolving all doubts in favor of the Act, we hold that the Constitution is no obstacle to the petitioner's recovery. * '* *"

Up to the time of the Davis case, supra, the jurisdiction, as above cited and quoted, seemed clear that when a longshoreman experienced an injury during the course of his maritime employment on navigable waters, his redress was in the Federal Courts, first under the law of admiralty and later (1927 and the following years) under the Longshoremen's and Harbor Workers' Compensation Act; if his injuries occurred on land, usually on the dock, his remedy was in the State Courts under the State Compensation Laws or Negligence Statutes. After the Davis case, there ensued a

number of cases encompassed within what the courts classed as the "doubtful area." Plaintiffs herein contend that these "doubtful area" cases are decisive of the instant controversies.

In Moores's Case, 323 Mass. 162, 80 N.E. 2d 478, 481, the injured employee was awarded compensation under the State Workmen's Compensation Law. His occupation was that of a "tag man," the major portion of his work being performed on piers; occasionally he was required to go aboard vessels. On June 28, 1945, while aboard a disabled vessel in dry dock, fastened to a pier to which it was berthed by bolts spanning a distance of three or four feet from the pier itself, the employee slipped on the step of a gun mount and suffered the injuries for which he sought compensation. The employee testified that at the time he was injured he was going to get where his crane operator could see him, so that he could give signals.

In affirming the award of the Superior Court in the Moores's Case, the Supreme Judicial Court of Massachusetts, after a review of the prior jurisprudence which we have also reviewed, stated, "Probably therefore our proper course is not to attempt to reason the matter through and to reconcile previous authorities, or to preserve fine lines of distinction, but rather simply to recognize the futility of attempting to reason logically about 'illogic,' and to regard the Davis case as intended to be a revolu-tionary decision deemed necessary to escape an intolerable situation and as designed to include within a wide circle of doubt all water front cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other. We can see no other manner in which the Davis case can be given the effect that we must suppose the court intended it should have, and we must assume that the court intends to follow that case in the future." On appeal, the United States Supreme Court stated, "The judgment is affirmed. Davis v. Department of Labor & Industries, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246." Bethlehem Steel Co. v. Moore, 335 U.S. 874, 69 S.Ct. 239, 93 L. Ed. 417.

In Baskin v. Industrial Accident Commission, 89 Cal.App.2d 632, 201 P.2d 549, the District Court of Appeal denied plaintiff's demand for compensation under State law, holding that the matter was exclusively within Federal jurisdiction. Plaintiff was a materialman whose work was performed almost entirely on shore or on ships under construction. A crane on the wharf moved materials from place to place on the S. S. William Moultrie, which was undergoing repairs on one of its holds. The crane's boom could not reach the planks already on board, to move them from one hold to

another, and it became necessary to send men aboard to do so. Despite standing instructions that Baskin should not be sent aboard ships under repair, he was ordered onto the Moultrie to help and while there fell down a hold and was seriously and permanently injured. The United States Supreme Court vacated the judgment of the District Court of Appeal, stating that Moores's Case, supra, was not available to the District Court of Appeal at the time of its consideration of the cause. 338 U.S. 854, 70 S.Ct. 99, 94 L.Ed. 523.

In the case of Beadle v. Massachusetts Bonding & Insurance Company, La.App., 87 So.2d 339, Beadle, a seaman, was operating his personal motor boat on an errand for his employer at the time of his death. In sustaining the widow's action under the Louisiana Workmen's Compensation Statute for the death of her husband, the Court of Appeal held that in view of the Davis case, supra, the remedies overlapped and plaintiff had her choice of either the Federal or State forum.

In the instant matter, the case of Richard v. Lake Charles Stevedores, Inc., La.App. 1957, 95 So.2d 830, 833, is the principal authority upon which plaintiffs rely and was the basis of the judgment of the trial court overruling the exception to the jurisdiction ratione materiae filed by Travelers Insurance Company, et al. Therein, the plaintiff Richard was injured in the course of his employment as a "longshoreman," while working in the hold of the S. S. Seagate, which was moored to the dock in the Lake Charles Harbor. The trial court dismissed plaintiff's suit for workmen's compensation on the ground that the Federal Government, with exclusive constitutional jurisdiction over maritime law and maritime injuries, had provided the exclusive remedy for longshoremen by the Federal Longshoremen's and Harbor Workers' Compensation Act; the Court of Appeal, First Circuit, reversed the judgment and remanded the case for further proceedings. The Court of Appeal stated:

"Admitting that at the time of enactment of the Longshoremen's Act, the judicial creation of the Jensen doctrine had created a bar to the remedy Louisiana attempted to provide, and which Congress was willing to afford Louisiana workers in their own courts, it is plain that under the Davis, Moores, and Baskin cases such artificial barrier no longer exists when the employee has elected to pursue his State compensation remedy instead of a federal maritime remedy."

This Court refused to issue Certiorari in the Richard case, supra, stating, "Writs refused. Judgment correct." The United States Supreme Court, 355 U.S. 952, 78 S.Ct. 535, 2 L.Ed.2d 529, denied a petition for certiorari.

Hahn v. Ross Island Sand & Gravel Co., 214 Or. 1, 320 P.2d 668, was a personal

injury action under the Oregon Employers' Liability Act, ORS 654.305 et seq. Plaintiff's general duties were on a dredge anchored to the shore; he looked after the machinery of the dredge and operated a winch to move the barge into position. He was injured while performing a different type of work; he was ordered to assist in transferring a large gravel bin or hopper, used for loading sand and gravel into trucks, from one barge to another. Plaintiff climbed to the top rung of a ladder nailed to the hopper and then experienced a fall when the ladder gave way. He landed on his back on hard-packed sand in the barge, receiving serious injuries. The Supreme Court of Oregon affirmed the lower court's ruling that plaintiff's sole remedy was under the Longshoremen's and Harbor Workers' Compensation Act. The United States Supreme Court, 1959, 358 U.S. 272, 79 S.Ct. 266, 267, 3 L.Ed.2d 292, recognized the limitation of Southern Pacific Company v. Jensen, supra, but reversed the judgment of the Oregon Supreme Court, finding that petitioner's injury occurred in the "twilight zone." It pertinently stated by Per Curiam:

"By its terms, the Longshoremen's and Harbor Workers' Compensation Act does not apply 'if recovery for the disability or death through workmen's compensation proceedings *may* * * *validly be provided by State law.'* Sec. 3, 44 Stat. 1426, 33 U.S.C. Sec. 903(a),

33 U.S.C.A. Sec. 903(a) (emphasis supplied). In Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246, we recognized that in some cases it was impossible to predict in advance of trial whether a worker's injury occurred in an operation which, although maritime in nature, was so 'local' as to allow state compensation laws validly to apply under the limitations of Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L. Ed. 1086. As to cases within this 'twilight zone,' Davis in effect, gave an injured waterfront employee an election to recover compensation under either the Longshoremen's Act or the Workmen's Compensation Law of the State in which the injury occurred. It seems plain enough that petitioner's injury occurred in the 'twilight zone,' and that recovery for it 'through workmen's compensation proceedings,' could have been, and in fact was, validly 'provided by State law'—the Oregon Workmen's Compensation Act. Ore.Rev. Stat. Sections 656.002–656.990. Therefore, the Longshoremen's Act did not bar petitioner's claim under state law. But since his employer had elected to reject them, the automatic compensation provisions of the Oregon Workmen's Compensation Act did not apply to the claim. Section 656.024 of that law provides, however, that when an

employer has elected to reject the Act's automatic compensation provisions his injured employee may maintain in the courts a negligence action for damages. Of course, the employee could not do this if the case were not within the 'twilight zone,' for then the Longshoremen's Act would provide the exclusive remedy. Since this case is within the 'twilight zone,' it follows from what we held in Davis that nothing in the Longshoremen's Act or the United States Constitution prevents recovery."

In Flowers v. Travelers Insurance Company, 5 Cir., 1958, 258 F.2d 220, 221, the United States Court of Appeals affirmed a judgment of the trial court holding that a workman injured while performing duties as a welder in making repairs on the S. S. Redstone, a large ocean-going tanker, floating dry-dock in Todd Shipyard in Galveston Harbor, could recover compensation under the Longshoremen's and Harbor Workers' Compensation Act. The Court of Appeals was of the opinion that the work the employee was doing was maritime. "For the repair of an existing vessel is one of the most ancient of maritime transactions giving rise even to that most cherished and characteristic badge—the formidable lien in rem." It discussed at length the holding of the Richard case, supra, and several other decisions as follows:

"* * * In three very recent incidents occurring in Louisiana and

Texas, both States with extensive maritime activities, State Courts have adjudged the State Compensation Acts applicable to injuries sustained while doing work of a direct and substantial maritime nature which formerly would have been clearly under the Federal Act without even the slightest suggestion of 'local concern' or other modifications on the strict Jensen principle.

"In two, Richard v. Lake Charles Stevedores, Inc., La.App., 95 So.2d 830, and Sullivan v. Travelers Ins. Co., La.App., 95 So.2d 834, the employee was injured while working as a longshoreman in the hold of an oceangoing vessel loading and unloading cargo. This is the precise employment described in the Longshoremen's Act and was indeed the very activity which gave rise to Jensen, * * * and more recently to Pennsylvania Railroad Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367, 1953 AMC 237. With Jensen so recently and definitely reaffirmed, it is difficult to see how the Louisiana Court could, in these words, examine into the very matter which was the main thesis of Jensen * *. More unsettling, what the Louisiana Court did was not undone by the Supreme Court for certiorari was denied, 355 U.S. 952, 78 S.Ct. 535, 2 L.Ed.2d 529. This latter circumstance, while always difficult to rationalize, we

regard as of little moment. We are told too often and too plainly that the denial of certiorari is of no significance, * * * for us, in the performance of our duty faithfully to interpret and apply Federal constitutional principles and interpret this Federal statute, to be swayed by State Court decisions which we think are fundamentally erroneous in a field in which, unlike Erie, it is the Federal Judiciary which has the last say.

"In the Texas case, Indemnity Insurance Co. v. Marshall, Tex.Civ.App., 308 S.W.2d 174, the Court, after holding that the employee's work as a ship repairman made the employment maritime in nature, nevertheless concluded, with an obvious reluctance, that the State Act applied because Moores's and Baskin absolutely compelled this result

"Thus, in the field of the actual making of repairs on an existing vessel, heretofore always considered clearly under the Federal Act, * * * the employee is apparently the one to make the choice.

"What has happened in Texas and Louisiana may soon occur amongst the maritime workers of Mississippi, Florida and Georgia. If with no marginal employment, no obscurity concerning the nature and kind of work or its importance to maritime commerce, no undefined or undefinable boundaries to set it apart from land-based activity, it is nonetheless left entirely to the choice of the injured employee to determine which route he will take, then Jensen has indeed lost its vitality, the Jensen line of demarkation, reaffirmed in Parker, has been overruled, and administrative finality, emphasized in Davis is just so much makeweight. When the destructive consequences are so rife, when thirty years' experience in the operation of the Longshoremen's Act would be disturbed by introducing uncertainty and confusion where, as to these two fields of ship repairmen and longshoremen, there is Federal assurance in the everyday administration of the Act, we decline to hold that the Court had such portentous purposes for Moores's or Baskin.

"The outlines of a case of an injury received on navigable waters while engaged in essential repairs to an existing vessel have long been clear and distinct. As to them, there was no twilight. Moores's and Baskin were devised to solve cases in, not to create, the twilight. * * *"

The United States Supreme Court refused Certiorari in the Flowers case, supra,

359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582; petition for rehearing denied, 1959, 359 U.S. 956, 79 S.Ct. 741, 3 L.Ed.2d 764.

Lastly, we cite Noah v. Liberty Mutual Insurance Company, 267 F.2d 218, 219, in which case the U. S. Court of Appeals, Fifth Circuit, was of the definite opinion that Hahn v. Ross Island Sand & Gravel Co., supra, did not go so far as to hold that a longshoreman is in the twilight zone; the Court said, "The effect of such a holding would be to overrule by implication Southern Pacific Company v. Jensen * * * and to expand the twilight zone to the point where all amphibious workers would be in the twilight zone, contrary to Davis v. Department of Labor and Industries of Washington, * * *" The Court held that a longshoreman, who was drowned while loading a ship in the Mississippi River, was covered by the Federal Longshoremen's and Harbor Workers' Act and not by the Louisiana Workmen's Compensation Act

From the above jurisprudence, quoted and summarized, we conclude that the Jensen doctrine has not been overruled by the Davis case, supra. See, Pennsylvania Railroad Company v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367. As stated by the Court of Appeal, in the instant matter, two exceptions to the Jensen doctrine have arisen with the passage of time and the evolving jurisprudence, namely, (a) the maritime but local rule, and (b) the "Twilight Zone" doctrine. Rationalizing the

Jensen doctrine and its exceptions, we conclude that longshoremen injured while performing maritime work on ocean-going vessels, afloat on navigable waters, are not performing work so local in character as to allow them redress for their injuries under the State Workmen's Compensation Act. Hahn v. Ross Island Sand & Gravel Co., supra; Flowers v. Travelers Insurance Company, supra; Noah v. Liberty Mutual Insurance Company, supra. We have no doubt as to where such injuries occur and see no reason for placing the harmful events in the "Twilight Zone." Moores's Case, supra, Baskin v. Industrial Accident Commission, supra, and Davis v. Department of Labor and Industries, supra, are not apposite.

While the holding in Richard v. Lake Charles Stevedores, Inc., supra, is divergent with our views, and in that case the application for Certiorari was refused, this Court has consistently held that a reversal and remand for trial on the merits is not a final judgment from which a writ will be granted.

In the instant matter, we find that Robert S. Ellis and William Stepter were longshoremen and were performing maritime work at the time of their injuries; they were injured aboard ocean-going vessels, afloat on navigable waters; their employers were engaged in fulfilling contracts strictly maritime in character and of an interstate

nature. We, therefore, conclude that plaintiffs' exclusive remedy was under the Federal Longshoremen's and Harbor Workers' Act, supra

For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is affirmed.

129 So.2d 740