ALFRED B. WELLS, Appellant and Cross-Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Ceres Terminals, Inc., Appellee and Cross-Appellant).

First District (Industrial Commission Division)   No. 1—95—1133WC

Opinion filed December 29, 1995.

Donohue & Clark, Ltd., of Rockford (James L. Donohue and Rodd Ramlow, of counsel), for appellant.

Garofalo, Hanson, Schreiber & Vandlik, Chartered, of Chicago, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Appellant, Alfred Wells, appeals the Industrial Commission's (Commission's) findings relating to the appellant's average weekly wage. Appellee/cross-appellant, Ceres Terminals, Inc. (Ceres), appeals the Commission's finding that it has subject matter jurisdiction to consider appellant's application for benefits and enter an award in favor of appellant. Ceres contends that, at the time of the injury, appellant was a longshoreman who was injured while performing his duties over navigable waters of the United States and, therefore, appellant can only be compensated under the provisions of the Long-

shore and Harbor Workers' Compensation Act (33 U.S.C. § 901 *et seq.* (1988)). We agree with Ceres' contention and, therefore, we reverse.

The facts in the present case are not in dispute. Ceres is a stevedore company that provides longshoring services for vessels at Iroquois Landing at 95th Street and the lakefront in Chicago, Illinois. Ceres is a land-based operation. Appellant is a 68-year-old longshoreman who has worked for Ceres and other stevedores. A longshoreman is a person who loads and unloads ships. Appellant was assigned to jobs as work became available by the International Longshoremen's Association, a land-based operation. The International Longshoremen's Association assigned appellant to work for Ceres on June 16, 1989. On that date, appellant was performing the job of "dunnage man" in the hold of the ship, the "Little Lillian," working with a forklift driver loading salvage steel. The Little Lillian was docked at 95th Street and the lakefront in Lake Michigan, a navigable waterway.

Appellant had to work on top of the stack of steel as well as on the floor of the ship. Among other things, appellant had to make sure that each piece of steel was flush and pushed together tightly so that the cargo would not shift during sailing. On June 16, 1989, shortly before noon, the hose broke that operates the hydraulic boom that raises the lift forks up and down. Oil spewed onto the landing area where appellant was working. It was raining at the time and the mixture of rain and oil formed a very slippery surface. Appellant ordered sawdust and an oil compound for the floor of the area where he was working. The sawdust and oil compound, as well as a new forklift, arrived at the area where appellant was working at 1:30 or 2 p.m. Appellant slipped off the top of the stack where he was working at 4 p.m. and fell onto cargo that was in the hatch of the ship. Appellant was severely injured from the fall. He filed claims for workers' compensation coverage under the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)) and under the Longshore and Harbor Workers' Compensation Act (33 U.S.C. § 901 *et seq.* (1988)).

In the proceedings under the Illinois Workers' Compensation Act, the arbitrator found that the Illinois Industrial Commission had jurisdiction over appellant's injury. He calculated the average weekly wage and awarded temporary total disability (TTD) benefits of $44^2/7$ weeks, medical expenses, and permanent partial disability (PPD) of 25% loss of use of his right arm and 20% loss of use of his right leg. The Commission reviewed the arbitrator's decision as to the issues of (a) jurisdiction, (b) causal relation, (c) the nature and extent of appellant's TTD and PPD, and (d) appellant's average weekly wage. The

Commission modified the arbitrator's decision as to appellant's average weekly wage, but otherwise affirmed the arbitrator's decision.

The circuit court, upon review, found that the Commission had subject matter jurisdiction over the above matter and that the Commission's recalculation of appellant's average weekly wage was not against the manifest weight of the evidence. However, the circuit court found that the Commission's TTD and PPD rates of $105.50 and $84.38, respectively, were contrary to the law. The circuit court found that the correct amounts are $120.55 for TTD and $108.49 for PPD.

We first address Ceres' contention that the Commission lacked subject matter jurisdiction to consider appellant's application for benefits. Ceres contends that, at the time of the injury, appellant was a longshoreman who was injured while performing his duties over navigable waters of the United States; that injuries sustained by appellant are within the exclusive jurisdiction of the Longshore and Harbor Workers' Compensation Act; and, therefore, appellant can only be compensated under the provisions of the Longshore and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq. (1988)). This issue is of first impression in Illinois. In order to properly address Ceres' contention, we feel compelled to review the line of cases demarcating Federal and State jurisdiction.

Federal courts have traditionally enjoyed exclusive jurisdiction over claims involving maritime workers. (See Sun Ship, Inc. v. Pennsylvania (1980), 447 U.S. 715, 65 L. Ed. 2d 458, 100 S. Ct. 2432.) In 1917, the United States Supreme Court held, in Southern Pacific Co. v. Jensen (1917), 244 U.S. 205, 61 L. Ed. 1086, 37 S. Ct. 524, that it was unconstitutional for the States to apply their workers' compensation statutes to longshoremen injured on the seaward side of the line between the land and the sea because it would interfere with the Federal policy of uniform maritime law. The line of demarcation between the land and sea became known as the "Jensen line." Jensen left longshoremen injured on the seaward side of the pier without a compensation remedy, while longshoremen injured on the pier enjoyed the protection of State workmen's compensation laws. (State Industrial Comm'n v. Nordenholt Corp. (1922), 259 U.S. 263, 66 L. Ed. 933, 42 S. Ct. 473.) Immediately after the Jensen decision, Congress twice attempted to fill this gap by passing legislation that would have extended State compensation remedies beyond the Jensen line. The Supreme Court, however, declared these statutes unconstitutional as an unlawful delegation to the States of congressional power. (Washington v. W.C. Dawson & Co. (1920), 264 U.S. 219, 68 L. Ed. 646, 44 S. Ct. 302; Knickerbocker Ice Co. v. Stewart (1920), 253 U.S.

149, 64 L. Ed. 834, 40 S. Ct. 438.) At the same time, the Supreme Court began to narrow the *Jensen* doctrine by providing, in some cases, that State remedies are available to maritime claimants because their circumstances are maritime, yet local in character. *Western Fuel Co. v. Garcia* (1921), 257 U.S. 233, 66 L. Ed. 210, 42 S. Ct. 89; *Grant Smith-Porter Ship Co. v. Rohde* (1922), 257 U.S. 469, 66 L. Ed. 321, 42 S. Ct. 157; see also *Sun Ship*, 447 U.S. at 717, 65 L. Ed. 2d at 461, 100 S. Ct. at 2435.

Under the maritime-but-local doctrine, if the employment of an injured worker was determined to have no direct relation to navigation or commerce, and the application of local law would not materially affect the uniformity of maritime law, then the employment would be characterized as maritime-but-local, and the State could provide a compensation remedy. (*Director, Office of Workers' Compensation Programs v. Perini North River Associates* (1983), 459 U.S. 297, 303, 74 L. Ed. 2d 465, 472, 103 S. Ct. 634, 639-40; see also *Rohde*, 257 U.S. 469, 66 L. Ed. 321, 42 S. Ct. 157 (holding that carpenter injured while working on partially completed vessel located in navigable waters may proceed under State's workers' compensation statutory scheme because neither carpenter's general employment nor his activities at the time of his injury had any direct relation to navigation or commerce, and the application of local law would not materially affect the uniformity of maritime law).) If the employment could not be characterized as maritime-but-local, then the injured employee would be left without a compensation remedy. *Perini*, 459 U.S. at 303, 74 L. Ed. 2d at 472, 103 S. Ct. at 639-40.

Congress was finally successful in 1927 in extending protection to maritime workers excluded by *Jensen* by enacting a Federal compensation law, the Longshore and Harbor Workers' Compensation Act (LHWCA) (33 U.S.C. § 901 *et seq.* (1988)). That statute provided, in pertinent part, that compensation was payable under the LHWCA for an injury occurring upon the navigable waters of the United States only if recovery through workmen's compensation proceedings could not validly be provided by State law. After the LHWCA was enacted, it became problematic to determine whether the Federal or State compensation scheme applied under a given factual situation. (*Sun Ship*, 447 U.S. at 718, 65 L. Ed. 2d at 461, 100 S. Ct. at 2435.) As Mr. Justice Brennan pointed out in *Sun Ship*, "the boundary at which state remedies gave way to federal remedies was far from obvious in individual cases. As a result, the injured worker was compelled to make a jurisdictional guess before filing a claim; the price of error was unnecessary expense and possible foreclosure from the proper forum by the statute of limitations." *Sun Ship*, 447 U.S. at 718, 65 L. Ed. 2d at 461, 100 S. Ct. at 2435.

This jurisdictional dilemma was alleviated in *Davis v. Department of Labor* (1942), 317 U.S. 249, 87 L. Ed. 246, 63 S. Ct. 225. In *Davis,* a steel worker drowned in navigable waters after falling off a barge while helping to load the barge with pieces of steel from a drawbridge that was being dismantled. (*Davis,* 317 U.S. at 250-51, 87 L. Ed. at 247, 63 S. Ct. at 226.) The widow of the deceased steel worker sought benefits under Washington's workers' compensation statute. The Washington Supreme Court held that the State could not, consistent with the Federal Constitution, make an award under its State compensation law to the widow of a workman drowned in a navigable river. (*Davis,* 317 U.S. at 250-51, 87 L. Ed. at 247, 63 S. Ct. at 226.) The Supreme Court reversed, not because the employment was maritime-but-local, but because of a new concept it articulated, the "twilight zone." (*Davis,* 317 U.S. at 256, 87 L. Ed. at 250, 63 S. Ct. at 229.) The Court recognized that despite its many cases involving the maritime-but-local doctrine, it had been unable to give any guiding, definite rule to determine the extent of State power in advance of litigation. (*Davis,* 317 U.S. at 253, 87 L. Ed. at 248, 63 S. Ct. at 227.) To remedy this jurisdictional dilemma, the court created the "twilight zone." The Supreme Court held that the boundary between Federal and State schemes was not a precise line but rather a "twilight zone," and that in *doubtful cases,* an injured worker could elect a Federal or State remedy. (Emphasis added.) (*Davis,* 317 U.S. at 256, 87 L. Ed. at 250, 63 S. Ct. at 229.) *Davis* effectively established a regime of concurrent jurisdiction within the "twilight zone." *Sun Ship,* 447 U.S. at 718, 65 L. Ed. 2d at 461, 100 S. Ct. at 2435.

We note that the concurrent jurisdiction provided by the "twilight zone" does not apply to employees who are engaged in traditional maritime employment and are injured over navigable waters because those situations are not *doubtful* cases. (See *Davis,* 317 U.S. at 256, 87 L. Ed. at 250, 63 S. Ct. at 229; *Noah v. Liberty Mutual Insurance Co.* (5th Cir. 1959), 267 F.2d 218; *Flowers v. Travelers Insurance Co.* (5th Cir. 1958), 258 F.2d 220; *Globe Indemnity Co. v. Calbeck* (S.D. Tex. 1959), 230 F. Supp 9; *Ellis v. Travelers Insurance Co.* (La. 1961), 129 So. 2d 729; *Wellsville Terminals Co. v. Workmen's Compensation Appeal Board* (1993), 534 Pa. 333, 632 A.2d 1305; *Wixom v. Travelers Insurance Co.* (La. App. 1978), 357 So. 2d 1343.) For example, in *Wixom,* the plaintiff was an ironworker who was performing ship repairs aboard a ship over navigable waters. The plaintiff was injured while performing the ship repairs and attempted to obtain benefits under the State's workers' compensation law. The *Wixom* court held that this case fell within the exclusive jurisdiction of the LHWCA. (*Wixom,* 357 So. 2d at 1344.) In reaching its decision,

the court focused on the fact that the plaintiff was a traditional maritime worker who was injured while repairing a vessel on a navigable waterway. (*Wixom*, 357 So. 2d at 1344.) The court held that this was not a "twilight zone" case. (*Wixom*, 357 So. 2d at 1345.) The court stated:

> "This doctrine [the 'twilight zone'] was developed for the benefit of workers where it was difficult to determine which jurisdiction would apply. Under these facts, however, we do not believe there is any so-called twilight zone, but that it is crystal clear that this is a pure maritime question." *Wixom*, 357 So. 2d at 1345.

In 1972, Congress amended the LHWCA by extending the LHWCA into the landward side of the *Jensen* line. (*Sun Ship*, 447 U.S. at 719, 65 L. Ed. 2d at 462, 100 S. Ct. at 2436.) The result of the 1972 amendments to the LHWCA was that the LHWCA became, for the first time, a source of relief for injuries that had always been viewed as the province of State compensation law. *Sun Ship*, 447 U.S. at 719, 65 L. Ed. 2d at 462, 100 S. Ct. at 2436.

The Supreme Court in *Sun Ship* was faced with the question of the effect of the landward reach of the LHWCA and whether the 1972 amendments to the LHWCA would exclude State-based claims under the State's workers' compensation law. In interpreting the 1972 amendments, the *Sun Ship* Court held that States may apply their workers' compensation scheme to land-based injuries falling within the coverage of the LHWCA. (*Sun Ship*, 447 U.S. at 722, 65 L. Ed. 2d at 464, 100 S. Ct. at 2437.) The Court stated that with respect to land-based injuries the 1972 extension of Federal jurisdiction supplements, rather than supplants, State compensation laws. *Sun Ship*, 447 U.S. at 720, 65 L. Ed. 2d at 463, 100 S. Ct. at 2436.

Appellant argues that *Sun Ship* suggests that not only does a State's workers' compensation statutory scheme share concurrent jurisdiction with the LHWCA landward of the *Jensen* line, but that there is concurrent jurisdiction on the seaward side of the *Jensen* line if the State's compensation law provides superior benefits to its injured workers than does the LHWCA, even in situations where maritime employees, who are performing traditionally maritime functions, are injured over navigable waters, *i.e.*, in non-"twilight zone" cases. Appellant contends that Professor Larson supports this argument, quoting a portion of his treatise in which Professor Larson discusses the *Sun Ship* decision. Professor Larson states in his treatise:

> "In *Sun Ship*, the Supreme Court affirmed the undiminished vitality, after the 1972 amendments, of the twilight zone and concurrent jurisdiction doctrines.

The only question that has been raised to the definitive nature of the Court's disposition of this issue is whether its reach is limited by the Court's reference to 'land-based injuries.' A reading of the opinion as a whole indicates that these fears are unfounded. As indicated in the outset, the Court's phrasing of the question in terms of land-based injuries can presumably be explained by the simple fact that this was indeed the only question before it, and that courts will normally not decide issues that are not actually presented by the case under consideration.

This view is repeatedly reenforced throughout the opinion, the entire theme of which is that the intent of the 1972 amendments was to add to the workers' remedies, and in no way to turn the clock back to the 'jurisdictional monstrosity that existed before the clarifying opinions in *Davis* and *Calbeck*.' That 'monstrosity,' as pointed out earlier, involved almost entirely, not land-based cases, but cases occurring on navigable waters. It follows that the Court meant this decision not merely to extend the concurrent-jurisdiction doctrine to the new land areas covered, but to preserve it as to the navigable-waters areas it had been applied to. The most cogent passage occurs near the beginning:

'Given that the pre-1972 Longshoremen's Act ran concurrently with state remedies in the "maritime but local" zone, it follows that the post-1972 expansion of the Act landward would be concurrent as well. For state regulation of worker injuries is even more clearly appropriate ashore than it is upon navigable waters.' [*Sun Ship*, 447 U.S. at 719-21, 65 L. Ed. 2d at 462-63, 100 S. Ct. at 2435-37.]

This is the clearest possible indication that concurrent jurisdiction in appropriate cases 'over navigable waters' persists, and that the rule is accordingly not confined to land-based injuries." 4 A. Larson, Workmen's Compensation Law § 89.73, at 16—410 through 16—412 (1989).

We disagree with appellant's interpretation of the above passages. We do not believe that Professor Larson argues that *Sun Ship* suggests that a State's workers' compensation statutory scheme shares concurrent jurisdiction with the LHWCA in situations where maritime employees, who are performing traditionally maritime functions, are injured over navigable waters. Rather, we believe that Professor Larson is simply saying that *Sun Ship* did not displace the case law which holds that in doubtful cases, *i.e.*, "twilight zone" cases, a State's workers' compensation statutory scheme shares concurrent jurisdiction with the LHWCA. The following passage of Professor Larson's treatise clearly supports our view: "It follows that the Court [in *Sun Ship*] meant this decision not merely to extend the

concurrent-jurisdiction doctrine to the new land areas covered, but to preserve it as to the navigable-waters areas *it had been applied to.* \*\*\* [C]oncurrent jurisdiction in *appropriate cases* 'over navigable waters' persists, and \*\*\* the rule is accordingly not confined to land-based injuries." (Emphasis added.) 4 A. Larson, Workmen's Compensation Law § 89.73, at 16—412 (1989).

The language in *Sun Ship* also contradicts appellant's interpretation of the *Sun Ship* decision. Specifically, in holding that States may apply their workers' compensation scheme to land-based injuries falling within the coverage of the LHWCA, the *Sun Ship* Court stated: "[W]e therefore find no sign in the 1972 amendments to the LHWCA that Congress wished to alter the accepted understanding that federal jurisdiction would co-exist with State compensation laws in that field which the latter may *constitutionally operate* under the *Jensen* doctrine." (Emphasis added.) *Sun Ship*, 447 U.S. at 722, 65 L. Ed. 2d at 464, 100 S. Ct. at 2437.

As previously noted, under the *Jensen* doctrine, States may not constitutionally apply their workers' compensation statutory schemes to maritime employees who are performing traditional maritime functions and are injured over navigable waters. (*Wellsville Terminals Co.*, 534 Pa. at 338, 632 A.2d at 1308; see also *Noah*, 267 F.2d 218; *Flowers*, 258 F.2d 220; *Globe Indemnity Co.*, 230 F. Supp 9; *Ellis*, 129 So. 2d 729; *Wixom*, 357 So. 2d 1343.) None of the modifications to the *Jensen* doctrine have changed this principle. *Jensen* has not been overruled, it has simply been narrowed. (See, *e.g.*, *Sun Ship*, 447 U.S. at 722, 65 L. Ed. 2d at 464, 100 S. Ct. at 2437; *Davis*, 317 U.S. at 256, 87 L. Ed. at 250, 63 S. Ct. at 229; *Wellsville Terminals Co.*, 534 Pa. at 338, 632 A.2d at 1308.) Since *Jensen* has not been overruled, it remains binding on this court. (See, *e.g.*, *City of Chicago v. Kimmel* (1964), 31 Ill. 2d 202.) The *Jensen* doctrine, which protects uniform maritime law and does not deal with land-based activities, was completely unaffected by *Sun Ship*. (*Wellsville Terminals Co.*, 534 Pa. at 338, 632 A.2d at 1308.) Therefore, maritime employees who are performing traditionally maritime functions and are injured over navigable waters cannot recover benefits under this State's compensation law.

In the present case, appellant was a longshoreman who was injured over navigable waters. Working as a longshoreman is clearly a traditional maritime activity. *(See Jensen*, 244 U.S. at 216, 61 L. Ed. at 1098, 37 S. Ct. at 529; *Davis*, 317 U.S. at 252, 87 L. Ed. at 248, 63 S. Ct. at 227; *Noah*, 267 F.2d at 219; *Ellis,* 129 So. 2d 729.) Since appellant was working as a longshoreman over navigable waters when he was injured, appellant cannot recover benefits under this State's compensation law.

Appellant argues that, under *Davis*, his injury falls in the "twilight zone" and, therefore, the Illinois Workers' Compensation Act has concurrent jurisdiction with the LHWCA. According to appellant, his injury falls in the "twilight zone" because he was an employee of a locally based stevedore company that provides ship loading services for vessels at the Iroquois Landing in Chicago, Illinois; his duties as a longshoreman were locally based; and at the time of his injury, he was loading scrap steel on a ship that was docked and located adjacent to land. We disagree with appellant's argument. Case law demonstrates that longshoremen injured over navigable waters fall outside the "twilight zone" as set forth in *Davis*. *Noah*, 267 F.2d at 219; *Ellis*, 129 So. 2d 729; see also *Wellsville Terminals Co.*, 534 Pa. at 340, 632 A.2d at 1309; *Flowers*, 258 F.2d at 221; *Globe Indemnity Co. v. Calbeck* (S.D. Tex. 1959), 230 F. Supp 9; *Wixom*, 357 So. 2d 1343.

In *Noah*, a longshoreman was loading pig iron on a ship docked in the Mississippi River at New Orleans. A barge was moored between the ship and the wharf. The longshoreman fell from the barge and drowned. The *Noah* court held that longshoremen injured over navigable waters fell outside the "twilight zone." (*Noah*, 267 F.2d at 219.) The court stated that the effect of a contrary holding would be to overturn by implication *Jensen* and to expand the "twilight zone" beyond what *Davis* contemplated. (*Noah*, 267 F.2d at 219.) The *Noah* court noted that the employment of longshoremen is the precise activity that gave rise to *Jensen*.

Further, in *Ellis v. Travelers Insurance Co.* (La. 1961), 129 So. 2d 729, Herbert Ellis, a longshoreman, was injured when he was struck by a load of cotton while working on board a vessel that was docked in navigable waters. Ellis sought benefits under the State's workmen's compensation statute. The *Ellis* court held that Ellis' remedy fell within the exclusive jurisdiction of the LHWCA. (*Ellis*, 129 So. 2d 729.) The *Ellis* court, citing *Noah*, reasoned that longshoremen who are injured while performing maritime work on a vessel afloat on navigable waters fall outside the "twilight zone." *Ellis*, 129 So. 2d 729.

We find *Noah* and *Ellis* persuasive. If longshoremen injured on navigable waters are in the "twilight zone," there is so little left that would be outside the "twilight zone" that there would be concurrent Federal-State jurisdiction in essentially all compensation cases involving maritime workers who are injured over navigable waters. In essence, the exception would swallow the rule. We also note that the Supreme Court in *Davis* stated: "Harbor workers and longshoremen employed 'in whole or in part upon the navigable waters' are

clearly protected by this Federal Act [meaning the LHWCA]; but employees such as decedent here [who was not a longshoreman], occupy the shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation." *(Davis,* 317 U.S. at 253, 87 L. Ed. at 248, 63 S. Ct. at 227.) This language shows that the *Davis* Court did not contemplate that the "twilight zone" included longshoremen injured over navigable waters. To put it another way, the *Davis* court did not believe that longshoremen injured over navigable waters is a "doubtful case." Therefore, because appellant's claim for compensation for his injury falls within exclusive Federal jurisdiction, the Commission lacked subject matter jurisdiction to consider appellant's application for benefits and enter an award in favor of appellant.

Because we find that the Commission did not have subject matter jurisdiction to hear appellant's case, we need not address his contentions on appeal.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County.

Reversed.

McCULLOUGH, P.J., and RAKOWSKI, HOLDRIDGE, and RARICK, JJ., concur.